DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Charell K., has appealed from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her children and placed them in the permanent custody of Children Services Board ("CSB"). This Court affirms.
 I {¶ 2} Appellant is the mother of I.K., born July 4, 2000, and D.K., born October 18, 2003. Appellant also has an older child, who is not a party to this action. Irvin Wilson was determined to be the father of I.K. Wilson did not attend the hearing below and is not a party to the present appeal, though he continues to be involved in Appellant's life. The father of D.K. was not determined. Service by publication was made on John Doe, unknown father of D.K.
 {¶ 3} CSB initially became involved with this family early in 2003 following receipt of a referral from the Battered Women's Shelter, where Appellant and I.K. had been staying. The referral indicated that I.K. had a black eye. On February 19, 2003, CSB investigated and found I.K to also have new scratches. Appellant claimed that an alarm clock fell on the child and that she ran into a stove. On March 4, 2003, CSB visited again. On that occasion, Appellant pulled the child toward her and the child became rigid. Appellant then put both hands on the sides of the child's temples and squeezed hard on her head. The child cried, and Appellant claimed that she was a healer who had been gifted by God. Appellant became angry at the CSB worker, and told the worker to take the child.
 {¶ 4} On March 7, 2003, CSB filed a complaint with allegations that I.K. was abused, neglected, dependent, and endangered, and sought an emergency order of temporary custody. In its complaint, CSB alleged that Appellant did not properly supervise I.K, that Appellant was verbally abusive, and that I.K. frequently had bruises. The trial court granted CSB's motion for temporary custody, and the matter proceeded to adjudication and disposition.
 {¶ 5} Following adjudicatory and dispositional hearings, the trial court found I.K. to be a dependent child and placed her in the temporary custody of CSB. The trial court adopted a case plan which required Appellant to address concerns regarding: (1) mental health, (2) anger management, (3) housing, and (4) parenting skills. For his part, Wilson was required to develop more effective parenting skills and complete a drug and alcohol assessment.
 {¶ 6} D.K. was born on October 18, 2003, while Appellant was incarcerated in the Summit County Jail after she threatened to kill the Juvenile Court Magistrate assigned to this matter. On October 20, 2003, CSB filed a second complaint, with allegations that D.K. was neglected and dependent, and sought an emergency order of temporary custody of the child. In its complaint, CSB alleged that Appellant had significant anger management and mental health problems, which precluded her from providing appropriate care to a newborn child. CSB also noted that because of the adjudication and circumstances surrounding the dependency of I.K., D.K. was in danger of being abused or neglected. See R.C. 2151.04(D). D.K. was added to the case plan. Upon adjudicatory and dispositional hearings, the trial court found D.K. to be dependent and placed him in the temporary custody of CSB.
 {¶ 7} On January 14, 2004, CSB moved for a six-month extension of temporary custody, pursuant to R.C. 2151.415. The trial court granted the extension, finding that the children were doing well in foster care, and that Appellant had made some progress on her case plan. However, the court also noted that Appellant was not being consistent in taking her medications. Wilson had not completed any case plan activities as to parenting skills or substance abuse.
 {¶ 8} On July 16, 2004, CSB moved for permanent custody of both children. On October 16, 2004, Appellant moved for a six-month extension. Following a hearing on both motions, the trial court denied Appellant's motion for a six-month extension and terminated the parental rights of Appellant, Wilson, and John Doe, and placed the children in the permanent custody of CSB.
 {¶ 9} Appellant has timely appealed, asserting two assignments of error. We have consolidated the assignments of error for ease of analysis.
 II Assignment of Error Number One
"The trial court's decision granting csb's motion for permanent custody was against the manifest weight of the evidence, contrary to law and/or an abuse of discretion and was not in the best interest of the minor children."
 Assignment of Error Number Two
"The trial court abused its discretion in denying appellant-mother's motion for a second six-month extension of temporary custody."
 {¶ 10} Appellant has asserted that the trial court erred in terminating her parental rights as to her two children and placing them in the permanent custody of CSB. She also contends that the trial court erred in denying her motion for a six-month extension.
 {¶ 11} Before a juvenile court can terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C.2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In reWilliam S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 12} As to I.K., the trial court found that the first prong of the permanent custody test was satisfied by the fact that the child had been in the temporary custody of CSB for at least 12 of the prior 22 months before the motion for permanent custody was filed. The trial court also found that the best interest of the child was to be placed in the permanent custody of CSB. Appellant has challenged only the best interest prong of the permanent custody test in regard to I.K.
 {¶ 13} As to D.K., who had not been in the temporary custody of CSB for 12 months before the motion for permanent custody was filed, the trial court found that the first prong of the permanent custody test was satisfied by a finding that he could not be placed with either of his parents within a reasonable time and should not be placed with his parents. The trial court also found that the best interest of this child was to be placed in the permanent custody of CSB. As to D.K., Appellant has challenged the findings of the trial court as to both prongs of the permanent custody test.
 {¶ 14} Although Appellant contends that the decision of the trial court was "against the weight of the evidence, contrary to law and/or an abuse of discretion," this Court does not review this finding under an abuse of discretion standard, for a trial court has no discretion to make a finding that is not supported by the evidence. Furthermore, Appellant makes no specific argument that the decision of the trial court was contrary to law, except insofar as it may be against the weight of the evidence. This Court reviews a trial court's factual findings to determine whether they were against the manifest weight of the evidence. See In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983.
 {¶ 15} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. Id. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
 {¶ 16} Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 17} In regard to the first prong of the permanent custody test, the record supports the trial court's finding that I.K. had been in temporary custody of CSB for more than 12 of the prior 22 consecutive months. See R.C. 2151.414(B)(1)(d).
 {¶ 18} As to D.K., the trial court found that he could not be placed with a parent within a reasonable time or should not be placed with a parent. In making this determination, the court is to consider all relevant evidence. R.C. 2151.414(E). R.C. 2151.414(E) contains several factors, the presence of any one of which requires the court, upon a finding by clear and convincing evidence that the factor exists, to enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with a parent. Id.
 {¶ 19} In 1996, the Ohio Supreme Court held that when a trial court determined in a permanent custody matter that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent, that court was required to find that one of the — then — eight specific factors enumerated in R.C. 2151.414(E) exist. In re William S.,
75 Ohio St.3d, at syllabus. The court explained that, under the statute as enacted by the General Assembly, trial courts did not have "unbridled discretion" to devise their own factors to justify termination of parental rights. Id. at 99. The statute was thereafter amended by the General Assembly to include additional specific factors, and also to include a non-specific category: "Any other factor the court considers relevant." R.C. 2151.414(E)(16).
 {¶ 20} Following the inclusion of this general factor in the statute, this Court observed: "The obvious import of this amendment is to clearly express the General Assembly's intent to give the trial court the very same discretion that was rejected by the Ohio Supreme Court in WilliamS." In re Burmeister (June 16, 1999), 9th Dist. No. 19200, at 8. In general, citation to a relevant "E factor" upon which the trial court relies in reaching its determination that a child cannot or should not be placed with a parent is the better practice in order to ensure proper appellate review. In re S.C., 9th Dist. No. 04CA008469, 2004-Ohio-4570, at ¶ 30. However, the amendment gives the trial court discretion to consider "any other factor" that it considers relevant to the issue of whether the child can or should be placed with a parent. In re Burmeister, supra.
 {¶ 21} Thus, a juvenile court has the discretion to consider all relevant factors in making its determination that clear and convincing evidence exists to establish that a child could not be placed with a parent within a reasonable time or should not be placed with a parent.
 {¶ 22} In the present case, the trial court did not explicitly cite to an "E factor" in reaching its conclusion that the children could not be placed with a parent within a reasonable time or should not be placed with a parent. The trial court did, however, provide detailed findings in its journal entry. Moreover, while Appellant nominally challenges the finding that D.K. could not be placed with her within a reasonable time or should not be placed with her, she has set forth no legal or factual argument explaining the basis of her challenge in her appellate brief.
 {¶ 23} When considering whether a child cannot be placed with the parent in a reasonable time or should not be placed with the parent, the focus is on the needs of the child and whether a parent can meet those needs. In re Christian (Dec. 1, 1999), 9th Dist. Nos. 19222, 19223, at 14, citing In re Higby (1992), 81 Ohio App.3d 466, 470. The trial court had before it abundant evidence that these children should not be placed with either Appellant or Wilson.
 {¶ 24} As to Wilson, he did not participate in any case planning efforts directed towards improving his parenting skills or addressing substance abuse problems. His temper was volatile and served to escalate the temper of Appellant, as well, when he was with her. He did not appear at the hearing below, nor has he appealed from the termination of his parental rights.
 {¶ 25} As to Appellant, the trial court found: (1) that she suffers from major depression and intermittent explosive disorder, i.e. severe and chronic mental health problems; (2) that she has had numerous convictions for violent offenses and that she currently has an outstanding warrant for her arrest; (3) that she has failed to comply with court-ordered counseling and prescribed medications; (4) that she has continued in a violent relationship with Wilson; (5) that she is incapable of following recommendations as to parenting and would pose a risk to the children's safety if given custody; (6) that she has failed to incorporate what she has learned about anger management into her behavior; and (7) that she is unable or unwilling to be an appropriate caregiver within a reasonable time.
 {¶ 26} The findings by the trial court correspond to several "E factors," specifically: R.C. 2151.414(E)(1), failure to substantially remedy the conditions causing the children to be placed outside the home; R.C. 2151.414(E)(2), chronic mental or emotional illness so severe that it makes the parent unable to provide an adequate permanent home for the children; and R.C. 2151.414(E)(14), unwilling to prevent the children from suffering physical, emotional, or mental neglect.
 {¶ 27} Upon review of the record, we conclude that the determination by the trial court that the children could not be placed with a parent within a reasonable time or should not be placed with a parent was clearly and convincingly supported by the weight of the evidence presented at the hearing below.
 {¶ 28} This Court next considers the second prong of the permanent custody test as to both children: whether it is in the best interest of the children to place them in the permanent custody of a public children services agency. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[1]
 {¶ 29} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." In re Smith (Jan. 2, 2002), 9th Dist. No. 20711, at 6. See, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 30} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
1. The interaction and interrelationship of the child.
 {¶ 31} Evidence regarding Appellant's interaction and interrelationship with the children did not demonstrate that there was a healthy family bond. Appellant failed to fully address her mental health issues. She had been diagnosed with a personality disorder with paranoid traits and intermittent explosive disorder. Her behavior was described by mental health professionals, the guardian ad litem, and CSB workers as erratic, volatile, belligerent, and threatening. She discontinued her counseling sessions as well as her prescribed medication. Appellant's visitation never proceeded beyond weekly supervised visits and included little positive interaction.
 {¶ 32} James Orlando, Ph.D., the clinical psychologist who diagnosed Appellant, cited examples of Appellant swinging a baseball bat at her sister and slamming her older son, who is not a party to this action, up against a wall. Appellant reportedly felt justified in these actions. According to Orlando, she said her son "could handle it," and she wanted to put the "fear of God in him" as well as the "fear of her in him."
 {¶ 33} Orlando recommended individual psychotherapy, anger management, parenting classes and a psychiatric evaluation. He also recommended medication because Appellant had considerable difficulty controlling her emotions, thinking, and behavior. In making his recommendation, Orlando emphasized that it would not be enough for Appellant to merely complete classes and to continue in counseling, but she would have to successfully complete the programs, incorporate what was taught, and change her behavior accordingly. Absent successful completion of these recommendations, Orlando did not believe Appellant should have unsupervised visitation or custody of the children.
 {¶ 34} David Brown, therapist at Portage Path Behavioral Health, testified that while Appellant participated in anger management treatment and made some progress, she had not successfully completed the program. Appellant stopped attending counseling sessions in June 2004. He gave examples of inappropriate behavior by Appellant, including that Appellant threatened a magistrate if anything happened to her daughter. In her own testimony, Appellant admitted threatening the magistrate and also admitted that it was inappropriate. Brown observed that Appellant had no support system except for Wilson, and her relationship with him was volatile, unstable, and constituted a negative influence.
 {¶ 35} Jay DiPaolo, the CSB caseworker initially assigned to the present case, expressed concern that Appellant had demonstrated an escalating pattern of threats, intimidating behavior, and sexual innuendo to himself and other staff members. He also expressed concern that Appellant's volatility, particularly when around with Wilson, has had an impact on the children. He noted Appellant's lack of a support system, and the fact that she referred to her own parents and siblings in very negative terms.
 {¶ 36} DiPaolo stated that Appellant had stopped taking her prescribed medication, her parenting was erratic, and she continued to struggle with her moods. DiPaolo questioned the strength of Appellant's bond with I.K., in that she was occasionally appropriately affectionate, but, at other times, had been very negative and discouraging to the child. She therefore does not consistently meet the child's needs. Based on Appellant's relationship with her older son, DiPaolo stated that he would be concerned with the safety of I.K. and D.K. as they got older.
 {¶ 37} Julia Mothersbaugh, the CSB caseworker during the last month of the case, testified that Appellant claimed to love Wilson very much, that she was currently living with him, that she was not currently in counseling, and that she was not taking her prescribed medication. The caseworker also testified that there was currently a warrant out for Appellant's arrest for leaving Oriana House.
 {¶ 38} Mothersbaugh's central concern was that Appellant was not able to incorporate things taught to her in her parenting classes and counseling sessions. She testified that Appellant was often inappropriate with I.K. On one occasion, Appellant told I.K. that her older brother moved away because he hated her. In her own testimony, Appellant denied saying the brother hated I.K., but admitted that she told the child her brother is not visiting her because "I think he's mad at you. * * * [H]e doesn't want to talk to you right now." Another time, D.K. put a whole chicken nugget in his mouth, and Appellant said that if he choked on it, he would learn his lesson. And again, when D.K. approached the stairs, Appellant said that if he falls, he will learn his lesson. Appellant did not directly dispute these statements.
 {¶ 39} Two case aides testified regarding visitations. One aide testified mostly about Wilson's visits, but was also questioned about Appellant's visits. The aide began by stating that his observations of Appellant were "[a] long time ago." While he said that "[I.K. and Appellant] have pretty appropriate interaction" and that Appellant "seemed pretty loving [,]" the aide's testimony was very general and included no specific examples of positive interactions between the Appellant and her children.
 {¶ 40} The other aide, Shawna Miller, testified in much greater detail as to Appellant's visitations. She testified that Appellant focused primarily on D.K. and had to be prompted to make any kind of affectionate gesture towards I.K. According to Miller, Appellant would give positive attributes to the baby and negative attributes to the three-year-old. Miller also thought Appellant unfairly placed greater expectations on I.K. than she should have placed on a three-yearold. I.K. was said to often be very upset after visits. Miller stated that she would be very concerned if Appellant were awarded unsupervised visitation or custody, since she demonstrated inappropriate behavior during supervised visits.
 {¶ 41} Appellant also testified on her own behalf. Appellant admitted that she threatened the magistrate, but denied that she would have actually hurt the magistrate. In regard to developing a support system, Appellant said she went to church last Sunday, but may not go this next week. In addition, she did not plan to move to Indiana where she had family. She explained: "I don't want anybody else disciplining my child but me. I don't want a group of my siblings, my brothers and sister, just whooping my child. I'm her mother. I'm their mother and that's my job. * * * I whoop her when she needs it * * * she's not a child that's going to be disciplined a lot. * * * [S]he knows right from wrong."
 {¶ 42} Appellant did not think she had any mental health problems, just a "weird personality." She did not think she was a violent person, although she admitted that her threats to magistrates and caseworkers are violent behavior. While she admitted that her relationship with Wilson was volatile, she has continued to associate with him. She also admitted that she hoped to marry him. She claimed she takes her medication when stressed, but also admitted that she stops taking it in order to drink alcohol. "I don't want to miss alcohol or beer. * * * I don't feel that it's that serious, but if you all want me to take it, I'd take it."
 {¶ 43} Except for Wilson, there was no evidence of any other family members or friends of Appellant with whom the children had an on-going relationship. The children were reported to be doing exceptionally well in foster care. The evidence regarding the interaction and interrelationship of the children weighs in favor of permanent custody.
2. The wishes of the children.
 {¶ 44} The children, ages four and one, did not testify regarding their wishes, but instead Vicki Jones, the guardian ad litem, testified on their behalf. R.C. 2151.414(D)(2). She explained that Appellant had not fully complied with her case plan regarding mental health concerns. At the time of her assessment, Appellant had severe psychological problems and her condition was not improving. Jones stated that I.K. was comfortable in the foster home, but was uncomfortable in the presence of her mother. According to the guardian ad litem, I.K. had reconciled with the fact that she did not want to go home with Appellant.
The record demonstrates that D.K. had spent virtually his entire life with the foster family and was doing exceptionally well in that placement. Jones testified that she believed it was in the best interest of both children to be placed in the permanent custody of CSB.
3. The custodial history of the children.
 {¶ 45} By the time of the hearing in this matter, I.K. had been in the temporary custody of CSB for 18 months, and D.K. for 12 months — virtually his entire life. Several visits by Wilson were cancelled because he arrived smelling of alcohol. Supervised visits by Appellant were suspended twice due to inappropriate, belligerent, and threatening behavior. Visits with the children by Wilson and Appellant were required to be separate because of the increased volatility that occurred when Wilson and Appellant were together.
 {¶ 46} There was a great deal of testimony that Appellant displayed behavior that was not only inappropriate, but harmful to I.K., during visitations. Based on Appellant's inappropriate behavior with her older son, and the disparate treatment she gave to I.K., there was concern that she would have increasing problems with I.K. and D.K. as they got older. In light of these difficulties, visitations never progressed beyond weekly supervised visits.
4. The children's need for a legally secure permanent placement.
 {¶ 47} The evidence indicated that both children need a legally secure placement and that there are no suitable friends or relatives to care for them. Because neither parent could care for the children, permanent custody to CSB was the only way to achieve that stability. The guardian ad litem, both caseworkers, and a case aide all testified that the best interests of the children required that they be placed in the permanent custody of CSB.
 {¶ 48} Furthermore, the weight of the evidence indicated that Appellant was not likely to be able to change her behavior and obtain a level of functioning that would allow for reunification within six months. The evidence further indicated that extending the case for six months would not be in the best interests of either child.
 {¶ 49} Appellant argues on appeal that she substantially completed her case plan, and that such compliance warranted the return of her children to her, or at least warranted a six-month extension. This Court has previously explained that while compliance with a case plan may be relevant to the trial court's best interest determination, it is not dispositive. In re A.A., 9th Dist. No. 22196, 2004-Ohio-5955, at ¶ 9.
 {¶ 50} Furthermore, the evidence does not support Appellant's claim that she substantially complied with her case plan. While Appellant may have attended parenting classes, some anger management classes, some counseling sessions, and obtained suitable housing, she has completely failed to implement the skills that she was being taught. Mere attendance at programs is not enough. Appellant's inability to put the lessons into practice supports the conclusion that it is not in the children's best interests to be placed in Appellant's care. The same concerns and conditions existed at the time of the permanent custody hearing, as existed at the time of the removal of the children from her home. Visitation never progressed beyond weekly supervised visits, and even supervised visits were unsatisfactory.
 {¶ 51} In light of the foregoing and based upon the entire record in this matter, we find that the weight of the evidence supports the trial court's determination that D.K. could not be placed with Appellant within a reasonable time and should not be placed with Appellant, and also supports the determination that it was in the best interests of both children to be placed in the permanent custody of CSB. We further find the trial court did not abuse its discretion in denying Appellant's motion for a six-month extension and in granting permanent custody of the children to the agency. Accordingly, Appellant's two assignments of error lack merit.
 III {¶ 52} Appellant's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Batchelder, J., Moore, J., Concur.
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.