DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Brandy M. ("the mother"), has appealed from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights to one of her minor children and placed the child in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.
 I {¶ 2} The mother is the natural mother of B.C.M., who was born January 14, 2004. The mother does not dispute that she has a long-standing problem with cocaine addiction or that she used cocaine while pregnant with B.C.M. The mother has two older children, each of whom lives in the custody of a different relative due to the mother's drug problem. The older children, who are not at issue in this case, apparently have never met B.C.M. Because B.C.M. tested positive for cocaine when he was born, he was placed in CSB custody directly from the hospital.
 {¶ 3} The mother stipulated that B.C.M. was an abused child pursuant to R.C. 2151.031(C) and (D). See In re Blackshear (2000),90 Ohio St.3d 197, 200 (holding that "when a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C. 2151.031(D),per se an abused child.") CSB later moved for permanent custody. Following a hearing on the motion, the trial court found that the mother had abandoned B.C.M. and that permanent custody was in his best interest.
 {¶ 4} The mother has timely appealed, raising two assignments of error. For ease of analysis, the mother's assignments of error have been consolidated.
 II Assignment of Error Number One
"The court erred in its finding that [the mother] abandoned her child, and thus there is no legal basis under a two-pronged analysis to support the order of permanent custody."
 Assignment of Error Number Two
"The court erred in its analysis of the law and the facts under R.C. 2151.414(E), and thus its order of permanent custody was not legally justified."
 {¶ 5} The mother has challenged the trial court's findings on both prongs of the permanent custody test.
 {¶ 6} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B); see, also, In re WilliamS. (1996), 75 Ohio St.3d 95, 99.
 {¶ 7} The trial court found that the first prong of the test was satisfied because the mother had abandoned B.C.M. The trial court's finding that the mother had abandoned B.C.M. was clearly supported by the evidence presented at the permanent custody hearing.
 {¶ 8} R.C. 2151.011(C) provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days[.]"[1] The evidence was undisputed that, at the time of the permanent custody hearing, the mother had not visited B.C.M. for more than eight months. This was sufficient to support a presumptive finding of abandonment and there was no evidence presented to rebut that presumption. The evidence demonstrated that the mother kept moving and did not inform CSB of her whereabouts. The caseworker went to considerable effort to track down the mother and to try to get her to visit B.C.M. and to work on other requirements of her case plan, but the mother repeatedly failed to follow through. The only explanation that the mother gave for her failure to visit B.C.M. was that she was using cocaine. That evidence would not rebut a presumption that the mother abandoned B.C.M. by failing to visit him for more than ninety days. Consequently, the mother has failed to demonstrate that the trial court erred in finding that she had abandoned B.C.M.
 {¶ 9} Next, this Court must examine the best interest prong of the permanent custody test. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]"
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
 {¶ 10} This Court will address each factor in turn. The evidence before the trial court on the first factor demonstrated that the mother has had minimal interaction with B.C.M. during his ten-month lifetime. In fact, the evidence demonstrated that, following B.C.M.'s release from the hospital, the mother visited with him only five times, for two hours each visit. All of those visits occurred within the first few months of his life. At the time of the permanent custody hearing, B.C.M. was ten months old and his mother had not even seen him for more than eight months.
 {¶ 11} B.C.M. has two older siblings, both of whom are living with relatives, but he has apparently never met either one of them. The mother testified that her older children would like to get to know B.C.M. but she never took any steps to enable that to happen. Consequently, there was no interaction or interrelationship between B.C.M. and his older siblings.
 {¶ 12} On the other hand, B.C.M. had been living in the same foster home since his release from the hospital following his birth and he was doing well there. He had developed a bond with the foster parents as well as the rest of their family. The only family relationship that B.C.M. has known has been with the foster family. The foster mother testified that she and her husband would be willing to adopt B.C.M., giving him a permanent family.
 {¶ 13} Because B.C.M. was only ten months old at the time of the hearing, the guardian ad litem spoke on his behalf. She recommended permanent custody to CSB, emphasizing the mother's repeated failures to visit with the child and the stability that B.C.M. had found in the foster home.
 {¶ 14} The custodial history of B.C.M. has been spent in CSB custody. Since being released from the hospital after his birth, the child has spent his entire short lifetime with the same foster family. During that time, the mother had little contact with him and did essentially nothing to work toward reunification with her child. The mother admittedly had a serious problem with cocaine addiction, yet she did not take even the first step toward resolving that problem. Throughout the ten months that B.C.M. was in CSB custody, the mother had not begun drug and alcohol treatment or counseling. In fact, she had not even completed a drug and alcohol assessment.
 {¶ 15} At the time of the permanent custody hearing, because the mother was incarcerated for a parole violation, she had been unable to use cocaine. By her own admission, this was the first time in several years that she had been "clean" for more than a few days at a time. She testified that she was ready to begin treatment and that she would need only a few months to complete a rehabilitation program and achieve long-term sobriety. The trial court found that the mother was unrealistic in her belief that she could achieve sobriety in such a short time. That conclusion by the trial court was supported by evidence that the mother's cocaine addiction was serious and had been a problem for her for several years. The mother had surrendered custody of two older children due to her drug problem and she had been unable to stop using cocaine even while pregnant with B.C.M. and while participating in a prior treatment program. After B.C.M. was placed in CSB custody and the mother was confronted with losing another one of her children, she continued to use cocaine regularly. It was not until the mother was incarcerated one month before the permanent custody hearing that she even expressed a sincere interest in achieving sobriety.
 {¶ 16} The mother had already had ten months to work toward reunification but had taken no positive steps toward addressing her drug problem. As the trial court stressed, it is not fair to B.C.M. to make him continue waiting to see if his mother can be successful in conquering her drug addiction.
 {¶ 17} There was also evidence before the trial court that B.C.M. was in need of a legally secure permanent placement and that such a placement could only be achieved by granting permanent custody to CSB. There were no suitable relatives available to care for the child and the foster parents were willing to adopt him.
 {¶ 18} The final best interest factor that the trial court was required to consider was whether any of the factors in R.C. 2151.414(E)(7) to (11) applied. Of obvious relevance here, is the factor set forth in R.C. 2151.414(E)(10), which applies when "the parent has abandoned the child." As detailed above, the evidence was undisputed that the mother had abandoned B.C.M., within the meaning of R.C. 2151.011(C), because she had not had any contact with the child for more than eight months.
 {¶ 19} Although the mother contends that the trial court erroneously found that R.C. 2151.414(E)(9) also was relevant here, the trial court's order does not explicitly include any finding that this provision applied in this case. In fact, the trial court did not even cite this provision, nor did it state sufficient facts to indicate implicitly that it was making such a finding. Absent an affirmative demonstration on the record, this Court will not begin to speculate as to whether such a finding would have been erroneous.
 {¶ 20} As the best interest factors clearly weighed in favor of permanent custody to CSB, there was ample evidence before the trial court to support its finding that permanent custody was in the best interest of B.C.M. Therefore, as both prongs of the permanent custody test were satisfied, the trial court properly terminated parental rights and placed B.C.M. in the permanent custody of CSB. The assignments of error are not well taken.
 III {¶ 21} The mother's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Reader, J., concur.
(Reader, J., retired, of the Fifth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] Although the mother erroneously asserted in her appellate brief that R.C. 2151.011 had been amended to remove this 90-day presumption, she later filed an erratum, in which she conceded that R.C. 2151.011(C) is still good law.