DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Melvin S., appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor child, S.H., and placed her in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} S.H., born on September 2, 2006, is the child of Tammy B. ("Mother") and Melvin S. ("Father"). CSB initially became involved in this case when it was notified by hospital employees that both Mother and child tested positive for cocaine at the time of S.H.'s birth. The agency obtained emergency temporary custody from the juvenile court. Although Mother was married to another man, she identified Melvin S. as the father of the child. Melvin S. was in jail at the time. S.H. was placed in a foster home and has remained there throughout *Page 2 
this case. In due course, the trial court adjudicated S.H. to be abused and dependent and granted temporary custody to CSB.
 {¶ 3} In October 2006, CSB filed a case plan which required Mother to address: (1) chemical dependency; (2) financial stability; (3) mental health; (4) housing; and (5) parenting skills. Because paternity had not yet been determined, the case plan directed any alleged father to establish paternity and provide support for the child. The case plan further directed the alleged fathers to "demonstrate their ability to support the [child] by establishing/maintaining regular visitation, maintaining stable housing and demonstrating age-appropriate parenting skills." In March 2007, the juvenile court recognized Melvin S. as the biological father of S.H., and directed CSB to develop a case plan for him. In November 2007, the case plan directives were amended to require Father to: (1) obtain employment so that he could provide for housing and other basic needs of the child; (2) complete assessments for substance abuse and follow all treatment recommendations; and (3) complete a parenting class. Father remained incarcerated throughout the entire trial court proceedings.
 {¶ 4} Mother stated that she intended, in particular, to address her chemical dependency issues. Ultimately, however, she failed to do so or to comply with any other portion of her case plan. She had no contact with her child for an entire year. Her service providers were unable to contact her. Mother had a long history of drug involvement and several criminal convictions, including convictions for solicitation and drug-related crimes. The trial court terminated her parental rights, and Mother has not appealed from the judgment of the trial court.
 {¶ 5} Father was incarcerated throughout the entire lower court proceedings. After CSB moved for permanent custody, Father sought a six-month extension of temporary custody, a *Page 3 
grant of legal custody to the paternal grandmother, or a dismissal of the motion for permanent custody on procedural grounds.
 {¶ 6} A hearing on all pending motions took place on December 13, 2007. Mother and Father were both incarcerated at the time, but were transported from their respective correctional facilities to participate in the hearing. At the conclusion of the hearing, the trial court granted CSB's motion for permanent custody and denied all other outstanding motions. The trial court found that the child could not be placed with either parent within a reasonable time or should not be placed with the parents, and also found that it was in the best interest of the child to be placed in the permanent custody of CSB.
 {¶ 7} Father timely appeals and assigns three errors for review. The first two assignments of error will be considered together because they are related.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT'S DECISION TERMINATING APPELLANT-FATHER'S PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT-FATHER'S MOTION FOR [A] SIX MONTH EXTENSION OR ALTERNATIVELY LEGAL CUSTODY TO A RELATIVE WHEN THE EVIDENCE DEMONSTRATED THAT APPELLANT HAD COMPLETED HIS CASE PLAN AND WAS ABOUT TO BE RELEASED FROM PRISON IN ORDER TO FURTHER DEMONSTRATE HIS ABILITY TO PARENT HIS CHILD."
 {¶ 8} Father argues that the agency did not meet the necessary burden of proof to terminate his parental rights and he challenges the findings of the trial court on both prongs of the permanent custody test. He also argues that the trial court erred in denying his motion for a *Page 4 
six-month extension of temporary custody and in denying his motion for legal custody to the paternal grandmother.
 {¶ 9} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99.
 {¶ 10} The trial court may terminate parental rights and grant custody of a child to the agency, therefore, only if it finds by clear and convincing evidence that both prongs of the above test are met. Clear and convincing evidence is more than a mere preponderance of the evidence. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. Instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,368. An appellate court will not reverse a trial court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. Id.
 {¶ 11} The trial court concluded that the first prong of the permanent custody test was satisfied because S.H. could not be placed with either parent within a reasonable time or should not be placed with a parent. See R.C. 2151.414(B)(1)(a). The trial court analyzed Father's *Page 5 
repeated incarcerations in the context of R.C. 2151.414(E)(12) and R.C. 2151.414(E)(13). In reaching its determination, however, the trial court implicitly relied upon R.C. 2151.414(E)(16), the catch-all provision which permits "[a]ny other factor the court considers relevant," when it found that the parents' extensive criminal history was relevant to its determination that the child should not be placed with either parent within a reasonable time or should not be placed with either of them. See In re B.C.M., 9th Dist. No. 05CA0001, 2005-Ohio-1818, at ¶ 19
(finding insufficient facts stated to indicate implicitly that the court was making a finding).
 {¶ 12} At the time of the permanent custody hearing, Father was serving a 17-month sentence for trafficking in cocaine and possession of cocaine. His sentence ran from August 14, 2006 until January 13, 2008. Father began serving this sentence before S.H. was born, and continued through the custody proceeding until after the trial court granted permanent custody to CSB. Father's criminal record demonstrated that he had also been convicted on five other occasions as an adult, including: (1) theft on December 22, 2004, with an 11-month sentence, suspended on condition of completing a program with Oriana House; (2) trafficking in cocaine and possession of cocaine on May 13, 1999, with sentences of six months and one year, to be served consecutively; and (3) drug abuse on August 23, 1993, with a sentence of six months. During his "20's," he was also convicted of: (4) breaking and entering and receiving stolen property, with a sentence of 18 months; and (5) robbery, with a sentence of 22 months. Father credited the two convictions occurring early in his adulthood to "stupidity" and those occurring later in his life to "greed."
 {¶ 13} Father's 30 years of adult life history reveal that he has repeatedly turned to crime. Father has had three drug-related convictions, despite participation in treatment programs in 1993 and 2005, and three theft-related convictions. Two of the drug-related *Page 6 
convictions, in 1999 and 2006, were for identical charges of trafficking in cocaine and possession of cocaine. Tiffany Averette-Smith, the CSB supervisor in this case, testified that a criminal record can have a negative impact on one's ability to parent because a criminal record, particularly felony convictions, can affect one's ability to provide housing, income, and, as a result, to provide care for a child. Two other districts have concluded that convictions prior to the birth of a child may be relevant to the question of permanent custody. In reGrant (Feb. 8, 2001), 10th Dist. No. 00AP-431 (finding that the repeated incarceration of a parent prior to a child's birth may be considered to be probative of a parent's future ability to provide a stable home for a child); In re Morales (Apr. 12, 2001), 8th Dist. No. 78271 (evidence of convictions prior to a child's birth may be relevant to the issue of permanent custody). Father argues that convictions occurring prior to the birth of his child and his current incarceration do not establish that he cannot provide care for S.H. going forward. However, in crediting his past convictions simply to stupidity and greed, Father has offered the trial court no credible reason to believe that his demonstrated life path will change.
 {¶ 14} In support of his position, Father has argued that he had experience in raising two accomplished adult children, a physician and a music producer, aged 33 and 30, respectively. Father conceded, however, that he could not take much credit for those children and admitted that he was not always around during their upbringing. The evidence indicates that he had been incarcerated twice during their early childhood. Father also testified that those children were born of different mothers, he was not married to their mothers, and he did not live with them for very long. At one point, in August 2007, Father requested that S.H. be placed with his 33-year-old daughter, but he could not provide an address. There is no evidence in the record that Father bore any major responsibility for parenting those two children. The trial court properly found *Page 7 
that "Father has failed to demonstrate any past record of responsibility as a parent" and concluded that he failed to show any insight into his daughter's needs or how he could meet them.
 {¶ 15} We conclude that the trial court did not err in determining that S.H. could not be placed with Father within a reasonable time or should not be placed with Father due to Father's extensive criminal record prior to the birth of his child, including several drug-related convictions despite participation in two drug treatment programs, the fact that he is currently incarcerated on drug-related charges, Father's failure to demonstrate any past record of responsibility as a parent, and his failure to show any insight into S.H.'s needs or how he could meet them. See R.C. 2151.414(E)(16).
 {¶ 16} CSB has urged the applicability of R.C. 2151.414(E)(13), and, in its decision, the trial court analyzed the potential applicability of the two portions of R.C. 2151.414(E) that specifically address criminal convictions and incarceration, R.C. 2151.414(E)(12) and R.C. 2151.414(E)(13). R.C. 2151.414(E)(12) mandates that the trial court shall enter a finding that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent if the court determines:
 "The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing." R.C. 2151.414(E)(12).
This section explicitly requires that a parent must be incarcerated for 18 months after the filing of the motion for permanent custody or the dispositional hearing. The motion for permanent custody was filed on July 20, 2007, the dispositional hearing took place in *Page 8 
December 2007, and Father was scheduled for release in January 2008. Therefore, by its terms, this section is not applicable to Father and the trial court did not find that it was.
 {¶ 17} R.C. 2151.414(E)(13) requires that the trial court shall enter a finding that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent if the court determines:
 "The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child." R.C. 2151.414(E)(13).
The trial court struggled with the question of whether this section applied to Father's situation, but concluded that it did not. In reaching its conclusion, the trial court considered that there are two necessary parts to this provision: (1) the parent has been repeatedly incarcerated, and (2) the repeated incarceration prevents the parent from providing care for the child. The trial court noted that Father had not been repeatedly incarcerated "since the child was born" and concluded that "[incarcerations prior to the birth of a child cannot `prevent' the provision of care for a person not yet born." The trial court implicitly relied on R.C. 2151.414(E)(16), however, when it found that the criminal history of Father, nevertheless, remained "relevant."
 {¶ 18} The trial court did not explicitly cite R.C. 2151.414(E)(16) in its decision, but the trial court's finding that Father's criminal history remained "relevant" to its consideration of whether the child could be placed with a parent within a reasonable time or should be placed with a parent along with an extensive discussion of his criminal record in relationship to the facts of this case make it apparent that the trial court implicitly relied on that factor in support of its decision. See In re I.K., 9th Dist. No. 22424, 2005-Ohio-1634, at ¶ 22
— 26 (despite the lack of explicit citation to "E factors," the fact that the findings of the trial court corresponded to several "E factors" was sufficient). *Page 9 
 {¶ 19} The General Assembly sanctioned the ability of trial courts to rely on "[a]ny other factor the court considers relevant," the so-called "catch-all factor," when it added that factor to R.C. 2151.414(E) shortly after the Ohio Supreme Court had held that the previous absence of such a factor meant that trial courts did not have "unbridled discretion" to devise their own factors to justify the termination of parental rights. In re William S. (1996), 75 Ohio St.3d 95, 99. This Court subsequently observed: "The obvious import of this amendment is to clearly express the General Assembly's intent to give the trial court the very same discretion that was rejected by the Ohio Supreme court inWilliam S." In re Burmeister (June 16, 1999), 9th Dist. No. 19200. Thus, a juvenile court now has the discretion to rely on other factors it considers relevant "in making its determination that clear and convincing evidence exists to establish that a child could not be placed with a parent within a reasonable time or should not be placed with a parent." In re IK., 9th Dist. No. 22424, 2005-Ohio-1634, at ¶ 21. The trial court properly utilized that discretion in this case.
 {¶ 20} Father next challenges the trial court's finding on the second prong of the permanent custody test, the best interest of the child. See R.C. 2151.414(D). Father argues that the evidence does not support that finding, and asserts that he could, with a six-month extension, establish a bond with his child, establish housing and employment, and demonstrate his ability to care for the child.
 {¶ 21} When determining whether a grant of permanent custody is in the children's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 10 
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 22} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. In re D.A.,113 Ohio St.3d 88, 2007-Ohio-1105, at ¶ 12. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Holcomb,18 Ohio St.3d at 368, quoting Cross, 161 Ohio St. at paragraph three of the syllabus.
 {¶ 23} An application of the best interest factors to the facts of this case demonstrates the following. First, Father had no relationship with S.H. and there is no evidence that any of his relatives had ever met her. The child is closely bonded with the foster parents and her three-year-old foster sister, happy in that placement, and doing well. Second, the guardian ad litem recommended permanent custody. Third, the child has been in the custody of CSB and placed with a foster family since she was four days old. Fourth, S.H. is young and needs permanency. *Page 11 
Father was not an appropriate placement, and there were no suitable relatives with whom the child could be placed.
 {¶ 24} Father has not specifically challenged the trial court finding in regard to any of the best interest factors. Rather, he argues that the judgment of the trial court was erroneous because: (1) CSB did not provide him with reasonable efforts in terms of visitation and case planning; (2) a six-month extension would have permitted him the opportunity to create a legally secure permanent placement for his daughter within a reasonable period of time; and (3) an award of legal custody to the paternal grandmother would have also achieved a legally secure permanent placement.
 {¶ 25} As to Father's claim that CSB failed to provide him with visitation and reasonable case planning services, we find his arguments to be without merit for the following reasons. Father complains that he was not invited to a family team meeting, but that meeting took place in September 2006, before paternity was established. Furthermore, Father was incarcerated during the entire proceeding. As to the lack of visitation while he was incarcerated, Father claims that his case is distinguishable from other cases involving incarcerated parents because he made efforts to contact CSB while he was in jail and specifically requested the opportunity to visit with his daughter. Father cites no legal authority that supports his claim that a request for visitation distinguishes his case, however, and no evidence was introduced as to whether such an arrangement was even possible. Absent legal authority or supporting evidence, we cannot presume that such visits would have been both possible and in the best interest of this infant.
 {¶ 26} Father also complains that he did not receive a specific case plan until November 2007. That case plan required Father to obtain employment, maintain housing, provide for the basic needs of the child, complete a substance abuse assessment, and complete a parenting *Page 12 
assessment. CSB presented testimony that it could not refer Father to community resources while he was incarcerated. A caseworker did visit Father in prison, although the parties dispute the value of those meetings. There was a generic case plan on the record from October 2006 which directed any "alleged fathers" to address visitation, housing and parenting skills. As suggested by the trial judge, the caseworker could have made inquiries regarding services available through the prison, but Father did participate in numerous programs that he felt were necessary and appropriate.
 {¶ 27} Even conceding that CSB should have made earlier and more directed overtures regarding Father, the reality is that Father was incarcerated for the entirety of his child's life and through 16 months of this proceeding. There was little the agency could do regarding the specifics of helping him to maintain employment, housing, "unconfined" sobriety, and establish child care until Father was released from prison. In addition, there was no realistic way Father could address the basic issues that were central to his ability to parent a child until he was released from prison.
 {¶ 28} Father also claims that the trial court erred in denying him a six-month extension. Father argues that he should have been permitted an extension so that he could demonstrate his ability to provide care for the child, while CSB contends that his incarceration does not justify more time for Father at the expense of a delay in achieving permanency for this child. We agree with the position of CSB on this point. The basis for Father's request for an extension is that he had been in prison during the entire life of his child and could not comply with normal case planning activities and demonstrate his ability to provide for the child. At 52, Father was a mature individual. He found himself in prison through no one's fault but his own. His plan, at this point, is speculative, and Father's history is not encouraging. It is not reasonable to base an *Page 13 
extension of temporary custody on the fact that a parent is in prison, particularly when it is the fifth time he has been incarcerated. We cannot support a result that would accord a benefit — at the risk of potential harm to an innocent child — based upon a parent's repeated criminal conduct. The trial court did not abuse its discretion in concluding that Father could not accomplish the necessary goals within the time of an extension and, therefore, in denying the motion for an extension.
 {¶ 29} Finally, we consider Father's argument that the trial court should have awarded legal custody to Barbara Cooper, the paternal grandmother. Father suggested Ms. Cooper as a legal custodian in March 2007. At that time, the 72-year-old paternal grandmother told CSB that she could not take care of the child because of her age and health. There was some suggestion that CSB failed to follow-up with Ms. Cooper and Father asserts that CSB failed to pursue this placement, but Ms. Cooper admitted that she talked with CSB on five separate occasions. Ms. Cooper did appear at the permanent custody hearing and testified that her health had improved and she was willing, at that time, to make a home for S.H. Ms. Cooper had never met the child, however, and had not pursued visitation with her. She currently permits her 54-year-old son, Jake, who has a criminal record, to reside in her home, but expects him to be out of the home before S.H. would move in. The trial court apparently determined that such a placement was not in the best interest of the child. The record contains sufficient evidence to support the conclusion of the trial court that placing an infant in the legal custody of a 72-year-old grandmother was not a permanent resolution, nor in the child's best interest.
 {¶ 30} Upon review, the record demonstrates that there was ample evidence before the trial court from which it could conclude that the child could not be placed with Father within a reasonable time or should not be placed with him and that permanent custody was in the child's *Page 14 
best interest. Consequently, the trial court did not err in denying the motion for legal custody, denying the motion for an extension of temporary custody, terminating Father's parental rights, and placing S.H. in the permanent custody of CSB. Father's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED IN DENYING APPELLANT-FATHER'S MOTION TO DISMISS CSB'S MOTION FOR PERMANENT CUSTODY AS THE MOTION WAS DEFECTIVE AND HEARD IN AN UNTIMELY MANNER THEREBY VIOLATING APPELLANT'S DUE PROCESS RIGHTS."
 {¶ 31} In this assignment of error, Father argues that the trial court erred, in violation of R.C. 2151.414(A)(2), when it denied his motion to dismiss on the basis that the permanent custody hearing was not held within 120 days of the filing of the motion for permanent custody. He contends that even though there may have been good cause for a delay as to Mother because she had belatedly requested appointment of counsel, there was no good cause for a delay as to him. Father also argues that the trial court violated due process by not requiring CSB to re-file the motion for permanent custody so that the hearing could be conducted within 120 days of the filing.
 {¶ 32} We find these arguments to be without merit. R.C. 2151.414(A)(2) specifically states that failure to hold a permanent custody hearing within 120 days of the filing of the motion "does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court." R.C. 2151.414(A)(2). Ohio decisional law also supports the conclusion that this requirement is not jurisdictional and does not require a dismissal of the action. See, e.g., In re K.G., 9th Dist. Nos. 03CA0066, 03CA0067, 03CA0068,2004-Ohio-1421, at ¶ 25; In re Allbery, *Page 15 
4th Dist. No. 05CA12, 2005-Ohio-6529, at ¶ 27; In re Joseph P, 6th Dist. No. L-02-1385, 2003-Ohio-2217, at ¶ 50 (all holding that the time limit in R.C. 2151.414(A)(2) is not jurisdictional). Father has not offered any decisional authority in support of his position. Moreover, a delay granted for the purpose of allowing Mother to obtain counsel does not violate Father's due process rights when he simultaneously sought a delay for other reasons.
 {¶ 33} Second, Father claims the motion for permanent custody should be stricken because it is inaccurate and defective on its face. His claim appears to be based on an argument that the motion was filed under R.C. 2151.413, but that it should have been filed under R.C. 2151.415. The reasons for the argument are not entirely clear. Father has not cited any case law to illustrate or support his argument, nor has he quoted language from the statutes by which to specifically demonstrate the alleged error. See App. R. 16(A)(7). It does not appear to this Court that Father was prejudiced by the reference to R.C. 2151.413, and Father has not, otherwise, demonstrated error.
 III. {¶ 34} Father's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 16 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
SLABY, J. CONCURS