DECISION AND JOURNAL ENTRY
{¶ 1} Ann M. ("Mother"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor children, M.W. and J.M., and placed them in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Ann M. and Ron M. are the parents of M.W., born May 25, 2004, and J.M., born October 16, 2005. Mother had previously had two older children removed from her care due to neglect and those children have been placed with relatives. M.W. and J.M. were each removed directly from the hospital based upon allegations of dependency with continuing concerns of domestic violence, unstable housing, and poor parenting skills. The two cases proceeded separately to adjudication and disposition. Each child was found to be dependent and was placed in the temporary custody of the agency. Approximately two years after M.W.'s removal and *Page 2 
upon agreement of the parties, M.W. was placed in a planned permanent living arrangement. M.W.'s placement was in the same home as J.M.'s temporary custody placement. Eventually, CSB moved for permanent custody of both children. Following a hearing, the trial court granted CSB's motion, terminated parental rights, and placed both children in the permanent custody of the agency. Mother timely appeals and assigns two errors for review.
 II. ASSIGNMENT OF ERROR I. "THE TRIAL COURT'S GRANT OF PERMANENT CUSTODY TO WAYNE COUNTY CHILDREN SERVICES BOARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT SUCH A JUDGMENT WAS IN THE BEST INTEREST OF THE CHILDREN."
 {¶ 3} Mother challenges the trial court order granting permanent custody to the agency as being unsupported by clear and convincing evidence.
 {¶ 4} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99.
 {¶ 5} The trial court found that the first prong of the permanent custody test was satisfied because the children could not be placed with either parent within a reasonable time and *Page 3 
also because the children had been in the temporary custody of CSB for at least 12 of the prior 22 months. See R.C. 2151.414(B)(1)(a) and (d). In support of the finding that the children could not be placed with either parent within a reasonable time, the trial court entered several findings pursuant to R.C. 2151.414(E): (1) the parents had failed to remedy the problems that initially caused the children to be placed outside the home, R.C. 2151.414(E)(1); (2) the parents suffer from a chronic condition that prevents them from parenting their children, R.C. 2151.414(E)(2); and (3) the parents failed to support and visit their children consistently, R.C. 2151.414(E)(4).
 {¶ 6} Mother challenges the findings on these three "E factors." If the trial court determines that any one of these factors has been established by clear and convincing evidence, it must enter a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with a parent. See R.C. 2151.414(E). One of the trial court findings was that, despite reasonable case planning and diligent efforts by the agency, the parents failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. See R.C. 2151.414(E)(1). In support of this finding, the trial court found that the parents never obtained stable housing. They had lived in at least seven different homes with multiple people coming in and out of those homes during the course of these proceedings. Mother argues that there was no evidence that these homes were inappropriate. There was evidence, however, that the parents were apparently unable to maintain independent housing and relied on others to help them afford housing. There was also evidence that the parents failed to provide proper care of their children when they permitted other people in their home.
 {¶ 7} In addition, the trial court found that the parents failed to utilize the individual counseling services offered by the agency. Mother argues that she complied with this mental *Page 4 
health-related objective by obtaining a psychological assessment and following through with marital counseling until she separated from her husband and by attending parenting classes. The psychologist had recommended individual counseling, as opposed to marital counseling, however, and Mother failed to comply with that recommendation. Furthermore, despite attending several sessions of parenting classes, Mother was still unable to demonstrate what she should have learned in those classes. The evidence demonstrates that Mother attended less than half the scheduled visits and failed to interact with her children during those visits; she just sat and watched the children play, but did not play with them. The guardian ad litem observed that the children demonstrated no connection with Mother.
 {¶ 8} The trial court's finding that the parents failed to remedy the conditions causing the children to be removed from the home was supported by clear and convincing evidence. The first prong of the permanent custody test is, therefore, satisfied.
 {¶ 9} The second prong of the permanent custody test requires the trial court to determine whether a grant of permanent custody is in the children's best interest. In so doing, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and] *Page 5 
 "(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 10} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. In re D.A.,113 Ohio St.3d 88, 2007-Ohio-1105, at ¶ 12. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 11} The first best interest factor requires consideration of the relevant personal interactions and interrelationships of the children. Neither of the children ever resided in the home of Mother or Father, but the children have resided together in the same home for at least two and one-half years. Twice-weekly supervised visits were initially scheduled. From January to April 2005, Mother attended only one visit and the visitation schedule was changed to once-weekly. Mother was offered the opportunity to resume twice-weekly visits if she attended six visits in a row, but she failed to accomplish that. According to Brooke Hider, the agency caseworker assigned to this case, Mother attended less than half the visits that were scheduled. Father attended a number of those visits with Mother, but, by all accounts, absent specific direction, he failed to interact or participate with the children in any way. Father was able to function only at a very low level intellectually and had his own guardian ad litem in this case. *Page 6 
 {¶ 12} Caseworker Hider expressed concern with the lack of interaction between the parents and children and with the arguments that occurred between Mother and Father during visitation. Ms. Hider testified that Mother would hold, feed, and change the children during the first several months, but after they were old enough to sit or crawl, Mother did not interact with them. According to both the caseworker and the case aide, Mother just sat on a couch and watched the children play. The children reportedly played alone or with each other rather than interact with Mother.
 {¶ 13} Ruth Yoder, a case aide, corroborated the testimony of the caseworker by stating that, although Mother was never inappropriate with the children, she failed to interact with them in a positive manner. She did not play any games with the children, and would talk to other adults instead of engaging her children. Ms. Yoder stated that the children were not automatically drawn to go to either Mother or Father.
 {¶ 14} Marianne Bowden testified to the results of her psychological assessment of Mother. She noted that Mother had been involved with CSB several times and had also been in several unstable relationships with men. Based upon her assessment, she concluded that Mother was functioning in a borderline intellectual range, had poor parental attachment to her children, and was at risk for physical abuse to her children. She questioned whether Mother could effectively parent her children and believed that Mother's unstable relationships with men, lack of stable housing, and borderline intellectual functioning could put her children at risk. She recommended that Mother participate in individual counseling, anger management, and parenting classes.
 {¶ 15} Joy Zimmerman, Mother's case manager at the Wayne County Board of MRDD, testified that Mother worked only 20 to 30 days in the last year. She indicated that Mother's *Page 7 
greatest needs are with self-direction, making good decisions, following through on goals, maintaining control of her emotions, and understanding how her decisions affect others.
 {¶ 16} Cheryl Villegas, the parents' marriage counselor, expressed concern with the possibility of bringing children into the home of the parents. She cited the history of violence in Mother's relationships with men and the fact that Mother had a relationship with a married man, while living with both him and her current husband.
 {¶ 17} Caseworker Hider testified that the foster parents with whom the children were placed were very attentive and that she had observed affection between the foster parents and the children. The children had also developed positive relationships with the extended family of the foster parents. There was no evidence that the children had a significant relationship with any other relatives of Mother or Father.
 {¶ 18} The wishes of these young children were expressed by Daniel Kaufman, the guardian ad litem. He indicated that he had observed some connection on behalf of Mother toward her children, but did not observe any connection on the part of the children toward Mother. He observed no connection at all between Father and the children, and he believed Father was incapable of caring for the children both because of his low intellectual functioning and a criminal conviction for gross sexual imposition. The guardian ad litem was also concerned with the ability of Mother to care for the children unassisted and in an uncontrolled setting. He noted Mother's unstable relationships with men and her inability to maintain stable housing. He concluded that it would be in the best interests of the children to be placed in the permanent custody of CSB. *Page 8 
 {¶ 19} The custodial history of the children reveals that the children never lived with their parents, but were in foster care for their entire lives. M.W. had been in foster care for three and one-half years, and J.M. had been in foster care for two and one-half years.
 {¶ 20} There was evidence before the trial court that there were no suitable friends or relatives willing to provide for the children's care. The foster parents were very interested in adopting the children if they were placed in the permanent custody of the agency. The guardian ad litem believed permanent custody was in the best interests of the children.
 {¶ 21} Mother also argues that the case plan was never presented to the trial court or introduced into evidence and that the agency, therefore, failed to comply with the requirements of R.C. 2151.413(C). That statute does not include any requirement that a case plan must be introduced as an exhibit during trial. Furthermore, the case plan had previously been filed in the juvenile court and was included in the record of this case.
 {¶ 22} There was ample evidence before the trial court from which it could conclude that permanent custody was in the children's best interests. The trial court did not err in terminating Mother's parental rights and in placing M.W. and J.M. in the permanent custody of CSB. Mother's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II. "THE TRIAL COURT FAILED TO COMPLY WITH THE MANDATE OF THE REVISED CODE BY NOT HOLDING THE PERMANENT CUSTODY HEARING WITHIN ONE HUNDRED TWENTY (120) DAYS OF THE FILING OF THE MOTION FOR PERMANENT CUSTODY, AND, FURTHER, BY NOT ISSUING AN ORDER REGARDING THE PERMANENT CUSTODY HEARING WITHIN TWO HUNDRED (200) DAYS OF THE FILING OF THE MOTION FOR PERMANENT CUSTODY."
 {¶ 23} Mother argues that the trial court failed to comply with R.C. 2151.414(A)(2) when it did not hold the permanent custody hearing within 120 days of the filing of the motion *Page 9 
for permanent custody and when it did not issue an order disposing of the motion within 200 days of the filing of the motion.
 {¶ 24} The final paragraph of R.C. 2151.414(A)(2) explicitly indicates that a failure to comply with these time periods does not affect the authority of the court to proceed, the jurisdiction of the court, or the validity of any order of the court. R.C. 2151.414(A)(2). Ohio courts have routinely held that these time periods are not jurisdictional and do not require a reversal or dismissal. See, e.g., In re S.H., 9th Dist. No. 24055, 2008-Ohio-3111, at ¶ 32; In re Allbery, 4th Dist. No. 05CA12,2005-Ohio-6529, at ¶ 27; In re Joseph P, 6th Dist. No. L-02-1385, 2003-Ohio-2217, at ¶ 50 (all holding that the time limits in R.C. 2151.414(A)(2) are not jurisdictional). Mother has not offered any decisional authority in support of her position and has not asserted that any prejudice accrued to her by reason of these delays. Mother's second assignment of error is without merit.
 III. {¶ 25} Mother's first and second assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 10 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 Slaby, J. Dickinson, J., concur. *Page 1