[Cite as *In re M.W.*, 2012-Ohio-5075.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 98214 and 98215**

# IN RE: M.W. and Mi.W.
# Minor Children

[Appeal by Mother]

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 10908339 and AD10908340

**BEFORE:**  Sweeney, P.J., S. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   November 1, 2012

**ATTORNEY FOR APPELLANT**

John H. Lawson
Brownhoist Building
4403 St. Clair Avenue
Cleveland, Ohio 44103

**ATTORNEY FOR APPELLEE**

Michelle A. Myers
Assistant County Prosecutor
C.C.D.C.F.S.
4261 Fulton Parkway
Cleveland, Ohio 44144

JAMES J. SWEENEY, P.J.:

{¶1} Appellant, T.W. ("Mother") appeals from the juvenile court's order that granted the Cuyahoga County Department of Children and Family Service's ("CCDCFS") motion for permanent custody relating to Mother's children, M.W and Mi.W. For the reasons that follow, we affirm.

{¶2} CCDCFS opened this case in August 2006 due to Mother testing positive for marijuana and PCP at M.W.'s birth. A case plan was established and, after an initial relapse, Mother completed an intensive outpatient treatment program in February 2007 and the case was closed in July 2007.

{¶3} The case was re-opened when Mother tested positive again for marijuana and PCP at the birth of Mi.W. on May 8, 2010. At that time, Mother was financially unstable and reported that her drug use was caused by depression. The children, M.W. and Mi.W., were both removed from Mother's custody at that time and a case plan was established in June 2010.

{¶4} The permanency plan was for reunification with Mother. Mother's case plan included substance abuse, mental health services, financial stability, housing, and paternity. There have been no significant amendments to the plan since its inception.

{¶5} Mother has a history of drug abuse, beginning at the age of 13 years old. She has abused drugs while pregnant with both M.W. and Mi.W. Both children have been diagnosed with adjustment disorder and both require weekly therapy for behavioral

issues. The children have been in the care of their maternal great uncle since being removed from Mother's custody. According to the social worker, the children are very bonded to this relative who places their needs first. Maternal great uncle has foregone career opportunities to care for the children and actively participates in their schooling and therapy. Further, maternal great uncle has cooperated, facilitated, and encouraged the children's parents to visit them during the course of the custody proceedings.

{¶6} Mother has participated in family drug court and has made numerous attempts at drug rehabilitation. Mother has been unable to maintain sobriety despite involvement and referrals to numerous intensive inpatient and outpatient programs. Mother also received two referrals for mental health services due to her depression. She was not able to obtain an appointment at either location and has, therefore, not been able to address the mental health component of her case plan.

{¶7} By February 2012, Mother was pregnant again and admitted to having used both marijuana and PCP in November 2011 and January 2012. Mother declined the social worker's offer to make further referrals and indicated she felt she could maintain sobriety on her own. But for brief employment at a Convenient Store, Mother has not been able to maintain a job. Mother has not satisfied the financial stability component of the case plan.

{¶8} Mother has addressed the housing and paternity components of the case plan.

**{¶9}** M.W.'s father and Mi.W.'s father have not satisfied their case plan objectives.

**{¶10}** The social worker spoke with Mother on a weekly basis of the need to address the case plan issues. Mother did not fully comply with the urine screen requirements but was consistent with attending 12-step meetings. Mother did attend visitation, but did not take advantage of available opportunities to see her children more often at her uncle's home. This may have been due to transportation difficulties.

**{¶11}** The testimony indicates that the longest period that Mother has been able to maintain sobriety was a five-month period.

**{¶12}** The guardian ad litem recommended that CCDCFS' motion for permanent custody be granted in order to establish some permanency for the children.

**{¶13}** CCDCFS filed its complaint in May 2010. CCDCFS was granted emergency custody. On May 18, 2010, Mother signed a 90-day statutory time waiver. She signed additional documents that day, including a drug court contract and a consent for release of confidential information. These documents were later executed by Mother's attorney and the drug court team. Mother waived service.

**{¶14}** CCDCFS was granted temporary custody on September 8, 2010, upon the court's finding that the children were neglected and dependent.

**{¶15}** Mother attended numerous drug court hearings, was discharged from the program in April 2006, however, continued to attend hearings after being discharged.

**{¶16}** Upon CCDCFS' motion, the court extended the order of temporary custody to December 27, 2011.

**{¶17}** CCDCFS moved for permanent custody on July 12, 2011 and the hearing on the motion took place on March 8, 2012. The court granted CCDCFS' motion on March 19, 2012.

**{¶18}** Mother appeals advancing four assignments of error for our review.

ASSIGNMENT OF ERROR I:

The trial court erred in failing to dismiss the agency's motion for permanent custody pursuant to O.R.C. 2151.414(A)(2).

**{¶19}** Appellant asserts that the court should have dismissed the motion for permanent custody because the trial court did not commence the hearing within 200 days after the motion was filed. CCDCFS counters that no error occurred, arguing that the statutory time periods are not jurisdictional and can be implicitly or expressly waived by a party.

**{¶20}** R.C. 2151.414(A) provides:

(2) The court shall hold the hearing scheduled pursuant to division (A)(1) of this section not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline. *The court shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion.*

* * *

*The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court.*

(Emphasis added)

{¶21} The final paragraph of R.C. 2151.414(A)(2) establishes that the statutory time limits set forth in the first paragraph do not deprive the juvenile court of authority or jurisdiction to issue an order beyond those time frames. The trial court is expressly directed to issue an order "not later than two hundred days after the agency files the motion." However, the legislature has explicitly provided that the trial court's failure to comply with the time limits "does not affect the authority of the court to issue any order * * * and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court." Courts have consistently rejected the argument that Mother advances here and she has offered us no decisional authority that has reached the contrary result. *E.g.*, *In re M.W.*, 2008-Ohio-4499, ¶ 24, citing *In re S.H.*, 9th Dist. No. 24055, 2008-Ohio-3111, at ¶ 32; *In re Allbery*, 4th Dist. No. 05CA12, 2005-Ohio-6529, at ¶ 27; *In re Joseph P.*, 6th Dist. No. L-02-1385, 2003-Ohio-2217, at ¶ 50.

{¶22} This court has previously determined that similar statutory time limitations language contained in R.C. 2151.353(F) is "directory rather than mandatory because they exist for the assurance of the prompt resolution of child custody matters rather than as a jurisdictional prerequisite to custody determinations[.]" *In re E.M.*, 8th Dist. No. 79249,

2001 Ohio App. LEXIS 5011, at *24-25 (Nov. 8, 2001). In that case, we held that "the remedy for a party aggrieved by a judge's delay is to petition an appellate court for a writ of procedendo to compel the execution of his statutory duty. Failure to do so at the trial level constitutes a waiver of that issue for purposes of appeal." ( *Id*. Other citations omitted.) That reasoning applies with equal force here.

{¶23} Accordingly, this assignment of error is overruled.

ASSIGNMENT OF ERROR II:

Appellant/mother's legal counsel representation was ineffective and below objective standards of reasonableness, and thus prejudiced the mother's rights.

{¶24} To substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407 (1986). In *State v. Bradley*, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if the defendant fails to prove the second prong of prejudicial effect. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 143, 538 N.E.2d 373.

{¶25} Prejudice exists when "the result of the trial would have been different" but

for counsel's ineffectiveness. *Id*. at paragraph three of the syllabus. Courts must always recall that properly-licensed counsel is presumed competent, *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965); and, that trial counsel must be afforded deference regarding trial strategy. *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶52.

**{¶26}** Mother identifies six areas she believes her counsel was ineffective: (1) not lodging an objection to the same judge presiding over Mother's drug court hearings and permanent custody hearing; (2) allegedly not being present during "crucial points of the proceedings" where Mother waived rights to due process; (3) allegedly failing to safeguard Mother's right to confidentiality regarding substance abuse issues and mental health issues; (4) not objecting to Mother's participation in drug court before the court obtained jurisdiction over her and not providing adequate advice to Mother regarding attendance at drug court hearings; (5) failing to seek dismissal of the CCDCFS' permanent custody motion for failure of service; and (6) failing to seek dismissal of the CCDCFS' permanent custody motion for failure to hold a hearing within the statutory time period.[1]

**{¶27}** Despite her allegations, Mother has not established that but for any or all of the above alleged failings of counsel, the outcome of the permanent custody

---

[1]Based on our resolution of the first assignment of error, counsel did not render ineffective assistance by not moving to dismiss based on the hearing being held outside the statutory time period.

disposition would have been any different. Her ineffective assistance of counsel claim fails accordingly. Additionally, Mother has not established that her counsel's performance was seriously flawed or deficient in any case.

{¶28} Mother's first allegation is premised upon her belief that the trial court judge should have recused herself on the basis that she also presided over Mother's drug court hearings. From that, Mother argues that counsel was therefore ineffective for not moving for the judge's disqualification. This contention is not supported by the record. It is well settled that a "judge need not recuse himself [or herself] on the basis that he [or she] acquired knowledge of the facts during a prior proceeding." *In re: Daniel E.*, 122 Ohio App.3d 139, 701 N.E.2d 408 (1997), citing, *State v. D'Ambrosio*, 67 Ohio St.3d 185, 188, 616 N.E.2d 909 (1993). Information learned by a judge in his/her judicial capacity, even from other proceedings, are considered judicial observations and does not create a personal bias that would require recusal. *Id.* Mother does not point to any evidence of personal bias exhibited by the judge in this record. Instead Mother contends there is an inherent conflict due to the same jurist presiding in both courts. The mere fact that the same judge presided over both the permanent custody proceedings and Mother's drug court hearings, without more, does not require the judge to disqualify herself, nor does it require counsel to file a motion for disqualification on that basis. Moreover, the evidence of Mother's drug history was relevant to the custody matter as it was the reason for the removal of the children from her custody. Evidence of Mother's rehabilitation

efforts was introduced at the hearing.

{¶29} Next, Mother asserts that she entered a drug court contract and drug court waiver allegedly without the benefit of having her public defender review and explain them to her. Mother bases the contention on the fact that her attorney executed the contract and waiver 16 days after she did. The record indicates, however, that Mother appeared with counsel on May 12, 2010 where the court addressed the matter of drug court. The parties discussed that the case was "going to drug court" and the court appointed the public defender to represent Mother at that time. The court further scheduled another hearing in the event the case was not accepted into drug court. Mother signed the drug court contract and waiver on May 18, 2010, while she was represented by counsel, who also signed the contract and waiver at a later date. Mother does not point to any requirement that her attorney execute the documents on the same day as her, although this is the preferable and most sensible practice. What is most significant is that counsel did sign the documents. We note that the drug court judge/magistrate signed them on the same day as Mother's counsel. There is no authority that would indicate the drug court contract and waiver were rendered void simply because Mother did not "reaffirm" and re-sign them on the same date her attorney executed them. It is significant that none of the documents were acknowledged by the court until after counsel had also executed them. Without any admissible evidence to the contrary, we cannot speculate or infer from the record that Mother's attorney failed to

review or explain the contract and waiver to her simply because they signed them on different dates. Mother does not point to any objection or any statements by her in this record to even support that contention.

{¶30} Mother's contention that her counsel was ineffective because the court "ordered" her to participate in the family drug court program before it had jurisdiction over her is not supported by the record. The record establishes participation in the program is voluntary. Mother was advised by the judge that she may or may not be accepted into the program. Mother was represented by counsel throughout these proceedings. The fact that counsel did not object to Mother's participation in the family drug court program was a reasonable strategy where Mother was attempting to satisfy the objectives of her case plan and achieve reunification with her children, which included a substance abuse component.

{¶31} Next, Mother contends her counsel was ineffective by failing to advise her about continued attendance at drug court after allegedly being terminated from the program on April 6, 2011. Mother suggests this resulted in her "mental health and substance abuse" records being "available to all to be used against her." Mother asserts that she attended eight hearings after being discharged until June 29, 2011. The State contends that counsel was not ineffective because Mother was not terminated from the drug court program until July 6, 2011. The journal entry dated April 6, 2011 does indicate that "Mother is to continue in drug court." The transcript from the April 6, 2001

proceedings further confirms that Mother was not discharged from the drug court program that day. Numerous journal entries after that date also provide that "Mother is to continue in drug court." The journal entry dated July 20, 2011, reflects that CCDCFS entered an oral motion requesting that this matter be discharged from drug court, counsel for mother objected, and the trial court granted CCDCFS' motion and discharged mother from the drug court program. That order was signed by the judge on July 13, 2011.

{¶32} Mother argues that her counsel should have sought dismissal because she was not served with the permanent custody motion and contends her waiver of service is invalid. Mother has submitted supplemental authority urging us to extend the Ohio's Supreme Court's recent decision regarding the validity of a juvenile's waiver of his/her right to an amenability hearing to apply in the context of a parent's waiver of service of process in custody proceedings. *State v. D.W.*, Slip Opinion No. 2012-Ohio-4544. We decline to do so.

> {¶33} The Ohio Supreme Court addressed the due process rights implicated by a parent's right to service of process in custody proceedings in *In re Thompkins,* 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, and stated: Our courts have long recognized that due process requires both notice and an opportunity to be heard. In [*Mullane*], the United States Supreme Court enunciated the standard for determining whether service of process comports with due process, holding: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."
>
> In accordance with this requirement, the government must attempt to

provide actual notice to interested parties if it seeks to deprive them of a protected liberty or property interest. However, due process does not require that an interested party receive actual notice. Moreover, while "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," due process does not require "heroic efforts" to ensure the notice's delivery.

*Id.*, ¶ 13-14, quoting, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315, 70 S.Ct. 652, 94 L.Ed. 865 (1950), other citations omitted.

**{¶34}** Where a party actually has notice of the hearing, appears for the hearing represented by counsel, and had a full opportunity to defend herself against the motion, the party cannot "demonstrate that any alleged defect in service of the motion impacted her right to due process or prejudiced her in any way." *In re D.T.*, 9th Dist. No. 26344, 2002-Ohio-3552. In this case, Mother not only appeared at the hearing with counsel, but also waived any defects in service. Mother has not demonstrated any defect in service that impacted her right to due process or prejudiced her in any way. Consequently, counsel was not ineffective in this regard.

**{¶35}** This assignment of error is overruled.

ASSIGNMENT OF ERROR III:

The trial court erred in granting the agency's motion for permanent custody as the goals set in the agency's case plan that were adopted by the court were impossible to complete within the time frame set forth.

**{¶36}** Mother contends that it was impossible for her to satisfy the requirements of her case plan due to the severity of her underlying addiction and an alleged inability to access mental health care due to the mental health provider's "back log of cases."

Counsel makes cogent arguments on Mother's behalf with respect to her inability to obtain mental health treatment. However, the record amply documents that Mother's failures in the case plan were with respect to her inability to maintain sobriety for any significant period despite being afforded a substantial amount of time and receiving numerous referrals and services.

> [N]eglected and dependent children are entitled to stable, secure, nurturing and permanent homes in the near term, are not required to "languish" in legally insecure placements for years while natural parents are unwilling or unable to correct serious parenting deficiencies, and their best interest is the pivotal factor in permanency case.

*In re T.S.*, 2009-Ohio-5496, ¶ 36. The court specifically found that Mother's chemical dependency is so severe that she is unable to provide an adequate permanent home for these children. Both children have behavioral problems that require weekly therapy. They are very bonded to their relative who has custody of them and who attends to their needs. The trial court's finding that these children could not be placed with their Mother within a reasonable time, is supported by the record evidence. While we are sympathetic to Mother's efforts towards rehabilitation, and the difficulties that accompany that process, the juvenile court did not err by granting the CCDCFS' motion for permanent custody in this case.

**{¶37}** This assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

The trial court's failure to raise the issue of the inherent conflict of having the same jurist preside over the matters in drug court and in the adjudication

of parental rights resulted in reversible error.

**{¶38}**  As set forth previously in this opinion, a "judge need not recuse himself [or herself] on basis that he [or she] acquired knowledge of the facts during a prior proceeding." *In re: Daniel E.*, 122 Ohio App.3d 139, 701 N.E.2d 408 (6th Dist.1997), citing, *State v. D'Ambrosio*, 67 Ohio St.3d 185, 188, 616 N.E.2d 909 (1993).  Further, we have found no evidence in this record that would have supported a motion to disqualify the judge based on the mere fact that she presided over Mother's drug court hearings. This assignment of error is overruled.

**{¶39}**  Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

JAMES J. SWEENEY, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR