[Cite as *In re N.B.*, 2016-Ohio-7372.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| N.B. A DEPENDENT CHILD | : | |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 16-CA-33 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. F2014--665

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: October 12, 2016

APPEARANCES:

For Appellee, Licking Co. Job
And Family Services:
KENNETH R. OSWALT
LICKING CO. PROSECUTOR
JEFFREY BOUCHER
20 S. Second St., Fourth Floor
Newark, OH 43055

For Appellant, Kenneth Hill Jr.:

MICHAEL R. DALSANTO
33 West Main St., Suite 106
Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Kenneth Hill, Jr. ("Father") appeals from the April 13 and April 29, 2016 judgment entries of the Licking County Court of Common Pleas, Juvenile Division. Appellee is the Licking County Department of Job and Family Services ("Agency").

**FACTS AND PROCEDURAL HISTORY**

{¶2} N.B. was born on October 21, 2013; Mother initially named Paramour as the father. Paramour was present at delivery and signed the birth certificate.

{¶3} An emergency ex parte order for removal was granted on September 29, 2014. Due to unstable housing and drug abuse issues with both Mother and Paramour, the Agency filed a dependency complaint on September 30, 2014. N.B. was placed in the emergency shelter care of the Agency and a case plan was filed on October 28, 2014.

{¶4} By judgment entry dated November 21, 2014, N.B. was found to be dependent and was placed in the Agency's temporary custody. The case plan was approved and incorporated into the trial court's judgment entry finding the Agency made reasonable efforts to prevent the child's removal and to achieve reunification.

{¶5} Pursuant to a motion for genetic testing, Paramour submitted to genetic testing. He was determined not to be the biological father of N.B. via test results filed on February 23, 2015.

{¶6} A semi-annual review was completed on March 4, 2015 and a judgment entry was filed on March 9, 2015 finding the Agency made reasonable efforts to return the child to her home and to finalize the permanency plan; the entry also noted Paramour was not the biological father of the child.

{¶7}    On March 9, 2015, the Agency moved to join Father as a party.  The trial court ordered Mother, Father, and N.B. to submit to genetic testing, ultimately resulting in identifying Father as the biological father of N.B.

{¶8}    The Agency filed a motion for permanent custody on August 21, 2015.  In its judgment entry of September 8, 2015, the trial court found the Agency made reasonable efforts to return the child to her home and to finalize the permanency plan.

{¶9}    The trial court's judgment entry also noted Father was incarcerated at the Licking County Jail.  Father was added as a party on September 15, 2015 and Paramour was subsequently dismissed.

{¶10} The first date for the permanent custody hearing was October 27, 2015.  Father attended with counsel and requested a continuance, which was granted.

{¶11} On January 5, 2016, the permanent custody hearing began; it was continued until January 26 and continued again until March 4, 2016.  Mother appeared for the first portion of the hearing on January 5 but failed to appear on March 4.  An amended case plan was also filed in the interim including services and objectives for Father.

{¶12} Evidence at the permanent custody hearing established Mother and Father had a casual relationship described as "hanging out;" family members did not consider them to be a couple.  Mother was involved with Father during a brief break in her relationship with Paramour but got back together with Paramour while pregnant with N.B. Paramour was present at delivery, signed the birth certificate, and was named by Mother as the putative father of N.B.

{¶13} Maternal grandmother testified, however, that the parties knew from the beginning of the pregnancy that Father was in fact the likely biological father. Father visited N.B. a few times when she was an infant and still in the custody of Mother.

{¶14} Father was indicted upon a felony count of aggravated possession of drugs (methamphetamine) in Licking County Court of Common Pleas case number 14 CR 733. Father absconded several times during the progression of the criminal case and multiple warrants were issued for his arrest. Ultimately he entered a plea of guilty as charged and was sentenced to a prison term of eleven months with a release date of July 11, 2016.

{¶15} Mother's struggles with drug addiction and the resulting chaos in her life were evident throughout the proceedings, culminating in her failure to appear for the second portion of the evidentiary hearing. Maternal grandmother acknowledged her daughter's struggles with addiction and testified Father is someone Mother does drugs with. Mother testified she knew from the beginning Father, and not Paramour, was N.B.'s biological father but she did not inform the Agency until sometime in 2015. Maternal grandmother corroborated that the family, including Father, Paramour, Mother, and herself, knew from the beginning of the pregnancy that Father was the biological father.

{¶16} The Agency eventually learned of Father's whereabouts only because he was in jail. N.B.'s ongoing caseworker met with Father once in October 2015 when Father was found at the Licking County Jail. In the interview, Father reported a history of substance abuse including methamphetamine and marijuana. The caseworker advised Father about working a case plan and he was told to contact the Agency upon his release from incarceration. When questioned about any potential relative placements, Father

said he had no contact with his own family due to drug involvement. Father never visited N.B. after the early visits Mother described.

{¶17} Via judgment entry dated April 13, 2016, the magistrate granted permanent custody to the Agency and found the Agency made reasonable efforts to achieve reunification and to find a permanent placement for N.B. The trial court's entry states the following in reference to Father:

> * * * *.
>
> [Father] is a drug addict with a history of involvement with the criminal justice system. He has absolutely no relationship with [N.B.]. Although his paternity was not established until 2015, [Father] knew that he was [N.B.'s] father from the time of her mother's pregnancy. He visited [N.B.] several times after her birth. However, once [N.B.] was in the custody of the Agency, [Father] did not attempt to visit his daughter. For much of 2015, [Father] was an absconder. He was on the run from outstanding arrest warrants. He was eventually incarcerated on a felony drug indictment in August 2015 and was ultimately sent to prison. [Father] is not scheduled to be released until July 2016 (ten to twelve weeks before this case reaches its two-year point.) [Father] will not have sufficient time to establish a new residence, to seek and begin new employment, to initiate and complete substance abuse counseling and mental health counseling and to build a relationship with a daughter that he does not know.

Reunification is simply not a viable possibility.  [Father] will not be an

appropriate parent for [N.B.] within the foreseeable future.

＊ ＊ ＊ ＊.

{¶18} Father objected to the magistrate's order.  On April 29, 2016, the trial court

overruled   Father's   objections   and   approved   the   magistrate's   findings   and

recommendations.

{¶19} In the entry, the trial court stated Father did not file a transcript of the

evidentiary hearing and made no references to the audio record.  The trial court noted it

undertook an independent examination of the record, listened to the entire audio

recording of the evidentiary hearing, and reviewed the exhibits.   The trial court further

noted in pertinent part in reference to Father:

＊ ＊ ＊ ＊.

2.  The minor child's guardian *ad litem* filed his written report

setting forth his recommendation that the child be placed in the

permanent custody of [the Agency].

＊ ＊ ＊ ＊.

As to [Father], the guardian *ad litem* noted he was

incarcerated, serving a prison sentence for aggravated possession

of drugs.

3.  The magistrate in his written decision identified [Father] as

a drug addict "with a history of involvement with the criminal justice

system."  "He has absolutely no relationship with [N.B.]."  He was

never married to the mother and … "For much of 2015, [Father] was an absconder. He was on the run from outstanding arrest warrants."

* * * *.

5. Legal counsel for the father filed on March 21, 2016 a motion with this Court requesting an order from this Court which would allow the father to participate via video conferencing in the second day of the permanent custody hearing which was held on March 26, 2016. Before the Court could grant the motion, legal counsel for the father orally withdrew the request noting "…I talked to [Father] and he does not want to be video conferenced." In other words, he voluntarily chose not to participate in the second day of the permanent custody hearing. * * * *.

6. Legal counsel for the father notes in his objections that "…there are presently services available in the prison that the Agency could help to coordinate." What evidence is there which justifies legal counsel to make such a conclusion? If AA/NA meetings were available to the father at Noble Correctional Institute, why did he not choose to voluntarily sign up for those services? * * * *.

7. In his objections, the father does not address the position of the guardian ad litem that he has found or recommended that permanent custody is in the best interests of the child. [Emphasis in original.] As noted above, the father has made absolutely no

references to the audio record in this case. He has filed no written transcript. Under the special circumstances of this case, the Agency had no obligation to work a case plan with the father, who initially did not acknowledge that he was the father.

* * * *.

{¶20} Father now appeals from the trial court's judgment entries of April 13 and April 29, 2016.

{¶21} Father raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶22} "I. THE TRIAL COURT ERRED WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT THE AGENCY PROVIDED REASONABLE CASE PLANNING AND DILIGENT EFFORTS."

**ANALYSIS**

{¶23} In his sole assignment of error, Father challenges the trial court's finding that the Agency provided reasonable case planning and diligent efforts. For the following reasons, we agree with the trial court's decision of April 29, 2016 incorporating the magistrate's decision of April 13, 2016, and therefore affirm.

*Note on the Appellate Record*

{¶24} Ohio Juv.R. 40 governs proceedings before a magistrate, and section (D) addresses objections to a magistrate's ruling. Section (D)(3)(b)(iii) states:

An objection to a factual finding, whether or not specifically designated as a finding of fact under Juv.R. 40(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

{¶25} Additionally, Juv.R. 40(D)(3)(iv) states: "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)."

{¶26} In Father's objections filed with the trial court, he raised a number of objections to the magistrate's factual and legal findings. We are unable to find any request for transcript of the evidentiary hearing prior to the filing of the objections. Pursuant to Juv.R. 40(D)(3)(b)(iii), Father's objections to the magistrate's findings should have been accompanied by a transcript of the magistrate hearing or, if a transcript was not available, an affidavit reflecting the relevant evidence from the hearing.  In the instant case, Father

provided neither. We therefore must conclude the trial court properly adopted the magistrate's findings and Father's objections did not satisfy the requirements of Juv.R. 40.

{¶27} Moreover, in violation of Juv.R. 40(D)(3)(iv), Father has raised identical issues in this direct appeal. If an appellant fails to provide the transcript of the original hearing before a magistrate for the trial court's review, the magistrate's findings of fact are considered established.  *In re W.O.*, 5th Dist. Guernsey No. 13 CA 18, 2013-Ohio-5003, ¶ 9.  As an appellate court, we are precluded from considering the transcript of the hearing submitted with the appellate record. *See State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 654 N.E.2d 1254 (1995).  "[T]he reviewing court is only permitted to determine if the application of the law was proper or if it constituted an abuse of discretion." *Eiselstein v. Baluck,* 7th Dist. Mahoning No. 11 MA 74, 2012–Ohio–3002, ¶ 18.

{¶28} Nonetheless, we are also cognizant that "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id*.; Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as " * * * the family law equivalent to the death penalty in a criminal case." *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id*.*

{¶29} We therefore substantively review Father's sole assignment of error, in which he argues the trial court's finding that N.B. could not be placed with him within a reasonable period of time is not supported by clear and convincing evidence.

*The Trial Court's Decision is Supported by Clear and Convincing Evidence*

{¶30} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *In re: Adoption of Holcomb,* 18 Ohio St.3d 361, 370, 481 N.E.2d 613 (1985).

{¶31} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990); *See also, C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* supra, 55 Ohio St.3d at 74.

{¶32} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the

weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); See also, *In re: Christian*, 4th Dist. Athens No. 04CA10, 2004–Ohio–3146; *In re: C.W.*, 2nd Dist. Montgomery No. 20140, 2004–Ohio–2040.

{¶33} Pursuant to R.C. 2151.414(B)(1)(a), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the following apply:

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was

previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶34} In this case, the trial court made findings pursuant to R.C. 2151.414(B)(1)(a).

{¶35} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. Relevant to the instant case, the statute states in pertinent part:

If the court finds, by clear and convincing evidence, the existence of any one of the following factors, the court shall enter a finding that the child cannot be placed with the parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made

available to the parents for the purpose of changing parental conduct

to allow them to resume and maintain parental duties.

* * * *.

(16) Any other factors the court considers relevant.

{¶36} As to reasonable efforts, R.C. 2151.419(A)(1) requires a trial court to determine whether a children's services agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." However, this statute applies only at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children." *In re P.S.,* 5th Dist. Licking No. 16–CA–11, 2016–Ohio–3489, ¶ 44, quoting *In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816. Thus, by its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413 or to hearings held on such motions pursuant to R.C. 2151.414. Id. Therefore, the trial court was not required to make a specific finding that the Agency made reasonable efforts to reunify the family. Id.

{¶37} In this case, the trial court made findings of reasonable efforts, prior to the hearing on the motion for permanent custody, on October 6, 2014, November 20, 2014, March 9, 2015, September 8, 2015, and March 7, 2016. Therefore, a showing of reasonable efforts was not required to be proven by the Agency or found by the trial court during the permanent custody hearing. *P.S.,* supra, 2016–Ohio–3489 at ¶ 46, citing *In re J.J.F.,* 5th Dist. Stark No. 2009–CA–00133, 2009–Ohio–4736.

{¶38} Father acknowledges the authority of *In re C.F.,* 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, supra, and its holding that a trial court is not required to make a specific finding that reasonable efforts were made to reunify the family in a permanent-custody proceeding. He argues, though, that a "form" of reasonable efforts is still required and cites our decision in *In re J.M.*, 5th Dist. Fairfield No. 2012-CA-23, 2012-Ohio-4705, ¶ 45, stating R.C. 2151.414.(E)(1) requires proof that the Agency engaged in reasonable case planning and made diligent efforts to assist the parents in remedying the problems that caused the removal of the child. Father's specific complaint is that he was not added to the case plan until January 8, 2016, and the Agency offered no "presently-available" services to Father. In other words, Father could not work on the case plan until he was released from prison. Father distinguishes the instant case from our decision in *In re P.S.*, in which we rejected similar claims by a temporarily-incarcerated father who argued the agency failed to offer him a case plan and therefore did not make reasonable and diligent efforts. *In re P.S.*, supra, 2016-Ohio-3489 at ¶ 47, citing *In re J.D.,* 3rd Dist. Hancock No. 5–10–34, 2011–Ohio–1458.

{¶39} We rejected the father's argument in *P.S.*, and unfortunately the circumstances of the instant case are even less favorable for Father. As we observed in *P.S.*, "[b]eyond maintaining the child[ ] in [her] temporary custody pending Father's release from transitional control and waiting to see if he could secure housing, maintain employment, and maintain his sobriety when not incarcerated, it is not clear what other efforts [the Agency] could have undertaken to remove the obstacle preventing reunification between Father and the children." *P.S.*, supra, 2016-Ohio-3489 at ¶ 52. In the instant case, N.B.'s ongoing caseworker recommended against any further

continuance; from the initiation of the case, N.B. has lived with a foster family interested in adopting her. "As noted by the Fourth District, the permanent custody statutes do not appear to contemplate holding a child in custodial limbo while a parent completes a prison term." *P.S.*, supra, 2016-Ohio-3489, at ¶ 52, citing *In the Matter of C.B.C.,* 4th Dist. Lawrence No. 15CA18, 15CA19, 2016–Ohio–916.

{¶40} The evidence at the hearing indicated Father knew he was N.B.'s biological father from the time of Mother's pregnancy. Father made little effort to visit N.B. or to play any role in her life. For much of 2015, Father was wanted for failure to appear in his felony criminal case. The record is devoid of any evidence that Father initiated any attempt to seek substance abuse treatment, to resolve his criminal case, to contact the Agency regarding a case plan, or to appear via teleconference at the evidentiary hearing.

{¶41} We have reviewed the record and find the trial court's application of the law to the facts is not an abuse of discretion. Juv.R. 40(D)(3)(iv). The trial court's findings are supported by clear and convincing evidence and Father's sole assignment of error is overruled.

## CONCLUSION

{¶42} Father's sole assignment of error is overruled and the judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.

By:  Delaney, J. and

Wise, P.J.

Baldwin, J., concur.