[Cite as *In re A.A.*, 2017-Ohio-8705.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re A.A.

Court of Appeals No.   L-17-1162

Trial Court No.   JC16256661

**<u>DECISION AND JUDGMENT</u>**

Decided:  November 27, 2017

* * * * *

Laurel A. Kendall, for appellant.

Kevin J. Ankney, for appellee.

* * * * *

**MAYLE, J.**

**{¶ 1}** Defendant-appellant, T.A., is the father of A.A.  He appeals the June 5, 2017 judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating his parental rights and awarding permanent custody to Lucas County Children Services ("LCCS").  For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} A.A. ("the child") was born to mother, A.U. ("mother"), and father, T.A. ("father"), in July of 2016. The day after the child's birth, hospital staff alerted LCCS that he had tested positive for opiates. LCCS obtained an ex parte order for shelter care custody. Upon his release from the hospital, the child was placed with a foster family.

{¶ 3} LCCS filed a complaint in dependency, neglect, and abuse, and a motion for shelter care hearing. The agency was familiar with mother and father because mother's five other children—four of whom were fathered by T.A.—had been removed from the home in 2013 and again in 2016.[1] It alleged that mother kept her pregnancy secret from LCCS during the proceedings pertinent to the other children and failed to seek prenatal care. Regarding the opiates in the child's system at birth, LCCS alleged that mother claimed to have taken Vicodin by prescription, but she was unable to produce proof. LCCS asserted that there was a history of severe domestic violence between mother and father and that father has a criminal history which includes charges and convictions for domestic violence. It also asserted that father has open bench warrants and did not complete case plan services in the proceedings relating to his other children.

{¶ 4} Both parents appeared for a shelter care hearing on July 11, 2016. Interim temporary custody was awarded to LCCS. The court appointed an attorney and guardian ad litem ("GAL") for the child. A case plan was developed with a goal of reunification, however, neither parent attended the case planning conference. The child was found to

---

[1] Custody of mother's oldest child was awarded to the child's father. Mother's grandmother has legal custody of the four children fathered by T.A.

2.

be dependent, neglected, and abused following a hearing on September 12, 2016. His parents did not attend that hearing and did not make themselves available for assessment.

{¶ 5} On December 21, 2016, LCCS moved for permanent custody. It alleged that the child cannot be placed with either parent within a reasonable amount of time or should not be placed with his parents, "and/or" the child has been in the temporary custody of LCCS for a period of 13 of the past 22 months, "and/or" the mother and father have both abandoned the child, and permanent custody with LCCS is in the child's best interest. In support of its position, LCCS alleged that mother and father are in an abusive relationship, both tested positive for opiates on July 8, 2016, and their whereabouts are unknown. It alleged that mother admits to heroin use, does not have housing, and has visited the child only once. As to father, it alleged that he had not established paternity, has an extensive criminal history, failed to engage in case plan services with his older children, and has not visited the child at all. LCCS asserted that no appropriate relatives had been found to care for the child.

{¶ 6} The parents failed to attend a case plan review on January 9, 2017. The court found that mother's whereabouts were unknown, both parents are uninvolved, father has failed to establish paternity, the child is doing well in foster care, and the goal of reunification is being amended to adoption. On January 25, 2017, father filed a motion requesting genetic testing to establish paternity, and stated that he is currently incarcerated at the Lucas County Jail. The court granted the motion and father's paternity was established.

3.

{¶ 7} LCCS's motion for permanent custody was tried on May 15, 2017. At that time, father was incarcerated at North Central Correctional Institution with a release date of April 23, 2018, and mother was at the Correctional Treatment Facility ("CTF"). Both were conveyed to the juvenile court for trial.

{¶ 8} At trial, Denise Greenblatt, the LCCS caseworker assigned to the case, and Glenn Hoffman, the child's attorney and GAL, testified. Greenblatt explained that she began working with the family in August of 2013 when mother's other children were removed from the home, and the present case was referred to her because both the child and mother tested positive for opiates at the time of the child's birth. She talked to mother at the hospital, but was unable to speak with father because he had just left.

{¶ 9} Greenblatt testified that she attempted to work on a case plan with the couple, but both "became AWOL" after LCCS took interim custody. The next time she saw mother was in October of 2016; mother was incarcerated at that time. She saw father in October or November of 2016; he was also incarcerated and has been incarcerated continuously since that time. Mother visited the child once about a week after he was removed from her custody. Father never visited with the child after he was removed from his mother's custody. Greenblatt explained her efforts to work with mother. She gave mother her business card and told her to contact her when she got to CTF. Mother's five other children are in the legal custody of others: her oldest child is with the child's father and the four other children are with their maternal great-grandmother. The child has had contact with his siblings. There has been one sibling visit and more are being planned.

4.

{¶ 10} Greenblatt testified that the child's foster parents wish to adopt him. She said he is in a very good environment, he is thriving, his needs are being met, and he is loved and protected. She discussed her efforts in finding relatives with whom to place the child. She said that a home study was completed for a paternal aunt, but was denied because (1) in the case involving the couple's other children, she allowed the children to be around mother and father despite being aware of their severe domestic violence and substance abuse issues; (2) she assaulted mother when she was seven months pregnant with the child because she was upset about the loss of the other children; and (3) her dog bit Greenblatt and she could not provide the animal's veterinarian records.

{¶ 11} LCCS offered into evidence docket entries establishing that father was charged with robbery on November 1, 2016. He entered a plea on January 31, 2017, to two counts of attempted robbery, and on February 15, 2017, he was sentenced to a prison term of 18 months. LCCS also offered docket entries evidencing mother's recent convictions and probation violations leading to her incarceration. Greenblatt acknowledged that LCCS does not facilitate visitation between a child and an incarcerated parent. She also acknowledged that she has not observed the child interact with either parent.

{¶ 12} Greenblatt testified that the child is 10 months old, is bonded with his foster parents, and the agency has sought permanent custody because he needs stability, structure, and an environment free of abuse and neglect. She mentioned an incident encountered in the matter involving the other children where father picked up a clothes dryer and attempted to throw it at mother.

5.

{¶ 13} Hoffman testified that in conducting his independent investigation, he interviewed mother, father, mother's maternal great-grandmother, two paternal relatives, and the foster parents. He previously served as the GAL for the other five children as well. He concluded that permanent custody in favor of LCCS and adoption by his foster parents is in the child's best interest. He said that the child and his foster family interact well, and he is healthy, happy, comfortable, and progressing well. He is bonded with his foster family and is not bonded to anyone in his biological family. Hoffman testified that neither mother nor father has addressed the issues that led to LCCS's involvement, and while mother engaged in treatment in the first case, father never has.

{¶ 14} In an order dated June 5, 2017, the court granted LCCS's motion, terminated mother and father's parental rights, and awarded permanent custody of the child to LCCS. Father appealed and assigns the following errors for our review:

I. The trial court erred in finding that appellee Lucas County Children Services Board had made a reasonable effort to unify the minor child with appellant, T.A.

II. The trial court erred in granting appellee Lucas County Children Services Board's motion for permanent custody as it was against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 15} Father claims in his first assignment of error that the trial court erred in finding that LCCS made reasonable efforts to reunify him with his son. In his second

6.

assignment of error, he claims that the trial court's judgment granting permanent custody to LCCS is against the manifest weight of the evidence. We address these assignments of error out of order. And because mother is not a party to this appeal, we limit our discussion to the trial court's findings as they relate to father.

## A. The juvenile court's findings under R.C. 2151.414

{¶ 16} R.C. 2151.414 provides the analysis that a juvenile court must undertake when considering whether to terminate parental rights and vest permanent custody in a children's service agency. Under that provision, the court must first find that one of the circumstances described in R.C. 2151.414(B)(1)(a)-(d) exists. Subsection (b) of that provision requires a finding that the child is abandoned; subsection (c) requires a finding that the child is orphaned and there are no relatives who are able to take permanent custody; and subsection (d) requires a finding that the child has been in the temporary custody of a public children's services agency or a private child placing agency for at least 12 months of a consecutive 22-month period. Subsection (a) requires a finding that the child has not been abandoned or orphaned, has not been in the custody of a public children's services agency or a private child placing agency for at least 12 months of a consecutive 22-month period, and that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re E.B.,* 12th Dist. Warren Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 14-15.

{¶ 17} If the court finds that R.C. 2151.414(B)(1)(a) applies, it must consider both whether granting permanent custody to the agency is in the child's best interest *and* whether any of the factors enumerated in R.C. 2151.414(E) are present which would

7.

indicate that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re B.K.,* 6th Dist. Lucas No. L-10-1053, 2010-Ohio-3329, ¶ 43.

{¶ 18} We review a trial court's determination in a permanent custody case under a manifest-weight-of-the-evidence standard. *In re P.W.* 6th Dist. Lucas No. L-12-1060, 2012-Ohio-3556, ¶ 20. In doing so, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). But while we review the evidence and consider witnesses' credibility, we must be mindful that the juvenile court, as the trier of fact, is in the best position to weigh evidence and evaluate testimony. *In re P.W.* at ¶ 20. Its discretion in determining whether an order of permanent custody is in the best interest of a child "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" (Internal citations omitted.) *In re C.P.,* 10th Dist. Franklin No. 08AP-1128, 2009-Ohio-2760, ¶ 10.

{¶ 19} Here, the trial court found that R.C. 2151.414(B)(1)(a) applies, therefore, it examined the R.C. 2151.414(E) factors. "[A] court need only find one factor under R.C. 2151.414(E) to support a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." *In re Carlos R.*, 6th Dist.

8.

Lucas No. L-07-1194, 2007-Ohio-6358, ¶ 38. In this case the court found that R.C. 2151.414(E)(1), (4), (10), and (16) were all applicable as to father:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(10) The parent has abandoned the child;

(16) Any other factor the court considers relevant.

{¶ 20} As to (E)(1), the court found that notwithstanding reasonable case planning and diligent efforts by the agency, father failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home by failing to successfully complete case plan services and failing to make himself available to be assessed for services following the child's birth. Under (E)(4), the court found that father has demonstrated a lack of commitment to the child by failing to regularly visit him when able to do so. As to (E)(10), the court found that father abandoned the child insofar as he had no contact with the child for over three months immediately after he was born. And as to (E)(16), the court found that father was in custody for such duration that it would take a significant amount of time for him to even start services.

{¶ 21} The court then turned to R.C. 2151.414(D)(1) to determine whether permanent custody in favor of LCCS is in the child's best interest. In making a best-interest determination, R.C. 2151.414(D)(1) requires the court to consider all relevant factors, including:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

10.

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 22} The court found that permanent custody in favor of LCCS is in the child's best interest because he has been in foster care his entire life, he is in the only home he has ever known, and he is well-bonded in his foster home. It found that his foster parents are appropriate caregivers, they have expressed interest in adopting him, and an award of permanent custody would provide him with a stable home. The court considered the GAL's recommendation in making its decision, and it found that LCCS's efforts to alleviate the issues that led to the removal of the child from his home were unsuccessful because the parents' whereabouts were either unknown or they were incarcerated.

**B. Manifest weight of the evidence**

{¶ 23} Father argues that the trial court judgment is against the manifest weight of the evidence. He claims that it has not been demonstrated that he has failed continuously and repeatedly to substantially remedy the conditions causing the child's removal from the home, that he lacks commitment, or that he has abandoned the child. He points out that he was present for the shelter care hearing and requested to be conveyed to the juvenile court for trial, but his incarceration prevented him from engaging in case plan

11.

services or visiting the child. He identifies his release date as April 23, 2018, but he explains that if he obtains judicial release after serving 80 percent of his sentence, he could be released as early as January 4, 2018. He urges that he should be given "a reasonable time" to engage in case plan services following his release from prison.

{¶ 24} In support of his position, father relies on R.C. 2151.414(E)(12), and suggests that this provision allows an 18-month window after the filing of a motion for permanent custody within which an incarcerated parent may engage in case plan services and demonstrate the ability to care for his child. R.C. 2151.414(E)(12) provides that the trial court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent where "[t]he parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing." Father urges that both his stated prison term and the early release date are within the 18-month window allowed under R.C. 2151.414(E)(12), therefore, he would be available to care for the child within a "reasonable time."

{¶ 25} Father misinterprets R.C. 2151.414(E)(12). That provision requires a trial court to find that a child cannot be placed with a parent within a reasonable time where the parent is incarcerated and will remain incarcerated for 18 months following the filing of a motion for permanent custody or a dispositional hearing. *In re S. H.*, 9th Dist. Summit No. 24055, 2008-Ohio-3111, ¶ 16. It does not create a mechanism for an incarcerated parent to delay proceedings while he completes his sentence.

12.

{¶ 26} The court did not rely on (E)(12) in finding that the child cannot be placed with father within a reasonable time. It relied on (E)(1), (4), (10), and (16). We review those findings to determine whether they are supported by the record.

{¶ 27} As to (E)(1), we find that the evidence supports the court's conclusion that father failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home by failing to successfully complete case plan services and failing to make himself available to be assessed for services following the child's birth. Greenblatt testified that she attempted to work on a case plan for father, but he became "AWOL." Hoffman testified that father never completed case plan services in the case involving his other four children. The court's findings under (E)(1) are not against the manifest weight of the evidence.

{¶ 28} As to (E)(4), the court found that father has demonstrated a lack of commitment to the child by failing to regularly visit him when able to do so  The trial court's orders permitted father to visit the child as deemed appropriate by the caseworker and GAL. The first mention in the record that visitation would be permitted was in the August 23, 2016 case plan. Father, of course, was incarcerated beginning sometime in October 2016 and was unable to visit with the child during that time. But no explanation was provided for his failure to visit with the child before his incarceration. We, therefore, conclude that the court's findings under (E)(4) are not against the manifest weight of the evidence.

13.

{¶ 29} As to (E)(10), the court found that father abandoned the child insofar as he had no contact with the child for over three months immediately after he was born. R.C. 2151.011(C) provides that a presumption of abandonment arises if a parent fails to visit or maintain contact with his child for more than 90 days. *In re T.J.*, 4th Dist. Highland Nos. 15CA15, 15CA16, 2016-Ohio-163, ¶ 35. This is true regardless of whether the parent resumes contact after 90 days. R.C. 2151.011(C).

{¶ 30} Here, father saw the child in the hospital, and he attended the July 11, 2016 shelter care hearing. It is not clear when his incarceration began—the record indicates that it was in October of 2016, but no specific date is provided.[2] Courts have held that a parent's incarceration does not defeat the presumption of abandonment where there has been a lack of contact during that period. *In re W.H.*, 5th Dist. Stark No. 2015CA00131, 2015-Ohio-4360, ¶ 14. Because the record demonstrates that father had no contact with the child after July 11, 2016, we conclude that the court's findings under (E)(10) are not against the manifest weight of the evidence.

{¶ 31} Finally, as to (E)(16), the court found that father was in custody for such duration that it would take a significant amount of time for him to even start services. Greenblatt testified that father had not even undergone an assessment to determine what services were necessary. Even assuming that father is released from prison in January of

---

[2] The docket entry admitted into evidence at trial indicates that father received 115 days' jail-time credit as of February 15, 2017, which suggests that he was arrested at the end of October of 2016.

14.

2018, he would still need to go through the process of being assessed and would then have to engage in any required therapy and services determined to be necessary. Under these circumstances, we conclude that the court's findings under (E)(16) are not against the manifest weight of the evidence.

{¶ 32} Father does not specifically challenge the court's best-interest determination, but we conclude that the trial court considered the relevant R.C. 2151.414(D)(1) factors, and we conclude that those findings are not against the manifest weight of the evidence.

{¶ 33} We find father's second assignment of error not well-taken.

### C. "Reasonable efforts" under R.C. 2151.419

{¶ 34} Father argues that the trial court erred in finding that LCCS made reasonable efforts to unify him with his son. He claims that the trial court should have applied R.C. 2151.414(E)(12) and concluded that he will be available to engage in services within a reasonable time. LCCS responds that the court made reasonable-efforts determinations during the course of the proceedings and father failed to object to those determinations. It also argues that the trial court was not required to make a reasonable-efforts determination at the hearing on the motion for permanent custody, but that it properly made the determination nonetheless.

{¶ 35} Generally speaking, under R.C. 2151.419(A)(1), the state must have made reasonable efforts to reunify the family prior to the termination of parental rights. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 21. "By its terms, R.C.

15.

2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33 or 2151.353"—pertaining to adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children *Id.* at ¶ 41; *In re S.W.E.*, 8th Dist. Cuyahoga No. 91057, 2008-Ohio-4234, ¶ 12. It does not apply to hearings on a motion for permanent custody filed pursuant to R.C. 2151.413. *Id.* at ¶ 43. Where, however, "the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the 'reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time." *Id.*

{¶ 36} Here, the court made all required reasonable-efforts determinations in accordance with its obligations under R.C. 2151.419(A)(1). And insofar as it relied on R.C. 2151.414(E)(1), it also found that the agency engaged in reasonable case planning and made diligent efforts to assist father in remedying the problems that led to the child's removal from the home. At the heart of father's challenge to this finding is the court's refusal to allow him to engage in case plan services following his release from prison. Again, he cites R.C. 2151.414(E)(12) to support his position.

{¶ 37} As previously explained, the court did not rely on R.C. 2151.414(E)(12) in determining that the child cannot be placed with father within a reasonable time. The trial court's decision to award permanent custody to LCCS was premised on father's failure (1) to visit with the child before his incarceration, (2) to undergo assessment, (3)

16.

to engage in case plan services in his previous experiences with LCCS, and (4) to even begin case plan services before his incarceration. Ohio courts have held that a trial court is "not required to keep [a] child in limbo or to experiment with [his] welfare in order to see whether [his parent] could adequately protect the child upon [his] release from prison." *In re M.M.*, 4th Dist. Meigs No. 14CA6, 2014-Ohio-5111, ¶ 33. *See also In re P.S.*, 5th Dist. Licking No. 16-CA-11, 2016-Ohio-3489, ¶ 52; *In re N.B.*, 5th Dist. Licking No. 16-CA-33, 2016-Ohio-7372, ¶ 39. We hold consistently with these decisions, and we find that the trial court was not required to prolong these proceedings until January or April of 2018 for father to *begin* to cooperate in the case planning process.

{¶ 38} We find father's first assignment of error not well-taken.

### III. Conclusion

{¶ 39} Given father's failure to visit with the child, to undergo assessment, and to begin case plan services before his incarceration, especially combined with his failure to engage in case plan services in his previous experiences with LCCS, we find that the trial court judgment is not against the manifest weight of the evidence. We find no error in the trial court's conclusion that the child could not be placed with father within a reasonable time, and we find that the court made appropriate reasonable-efforts determinations. The trial court was not required to delay its decision to allow father to engage in services following his release from prison.

17.

**{¶ 40}** We, therefore, find father's two assignments of error not well-taken, and we affirm the June 5, 2017 judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating his parental rights and awarding permanent custody to Lucas County Children Services ("LCCS"). The costs of this appeal are assessed to father under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____

                                        JUDGE

James D. Jensen, P.J.

                                        _____

Christine E. Mayle, J.                  JUDGE

CONCUR.

                                        _____

                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.